Michael SEWAK and Patricia Sewak, Appellees,

v.

Charles LOCKHART and Hope Lockhart, Appellants.

Michael SEWAK and Patricia Sewak, Appellants,

v.

Charles J. LOCKHART and Hope Lockhart, Appellees.

Superior Court of Pennsylvania.

Argued March 18, 1997.
Filed Aug. 14, 1997.

---

Blake Berenbaum, Philadelphia, for Charles & Hope Lockhart.

Francis J. Sullivan, Newton, for Michael & Patricia Sewak.

Before CAVANAUGH, HUDOCK and HESTER, JJ.

HUDOCK, Judge.

In these cross-appeals both parties allege error with regard to the judgment entered in favor of Michael and Patricia Sewak (Buyers) and against Charles J. and Hope Lockhart (Sellers) in a fraud action involving the sale of a home. Sellers ask this Court to reverse the trial court's denial of their motions for judgment notwithstanding the verdict and

new trial, and Buyers ask this Court to vacate the trial court's order limiting the amount of attorney's fees awarded to them. We affirm.

The facts and procedural history may be summarized as follows: The case arises from the sale of Sellers' house at 4225 Remo Crescent, Bensalem, Bucks County, to Buyers. Several years prior to the sale of the house, Sellers had paid a contractor $12,000 cash to renovate their basement. As part of these renovations, a steel lally column, which was the main structural support for the house, was removed. Shortly after Buyers moved into the house, they noticed that the kitchen floor was uneven. Additionally, doors in the house were out of align, and the plaster on the walls was cracking. Months later, they observed a noticeable sag on the first and second floors. They hired a contractor to determine the cause. After viewing a neighbor's basement and removing part of Buyers' basement ceiling and wall coverings, the contractor determined that the sagging was caused by the removal of the lally column. Ultimately, Buyers discovered an illegal temporary jack behind wires in the heater closet which apparently was used to replace the needed structural support. The contractor also determined that the removal of the lally column would have eventually resulted in the collapse of the house.

Buyers filed a lawsuit on June 23, 1994, alleging three causes of action: 1) fraud as a result of Sellers' failure to disclose the removal of the lally column; 2) breach of contract for Sellers' failure to complete the remodeling of the basement in a workmanlike manner; and 3) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. sections 201–1, *et seq.*, due to Sellers' failure to disclose the removal of the lally column. On October 18, 1995, an arbitration award was entered in favor of Buyers in the sum of $6,757.00. Sellers appealed that award to the trial court and the matter was scheduled for trial before a jury. Prior to trial, the court dismissed Buyers' breach of contract claim. On May 29, 1996, the jury returned a verdict in favor of Buyers, specifically finding that: 1) Sellers concealed or failed to disclose a hidden, latent defect in the property they sold to Buyers; 2) the defect was serious and dangerous such that it presented a hazard to the health and safety of the occupiers of the property so as to pose a serious risk of harm to the occupiers or to the structure of the property; 3) Sellers' acts in concealing or failing to disclose the defect resulted in ascertainable loss or damage to Buyers; 4) Buyers were entitled to $5,000.00 in damages; and 5) Sellers engaged in fraudulent conduct which either created a likelihood of confusion or misunderstanding as to the sale of their property to Buyers or represented that their property was of a particular standard, quality or grade. The jury also recommended that the trial court award, under the UTPCPL, additional damages to a maximum of three times the actual damages sustained and recommended the amount should be $15,000.00.

On July 3, 1996, the trial court heard oral argument from counsel on the questions of whether it should award attorney's fees and whether it should adopt the jury's recommendation to award treble damages. By order dated August 19, 1996, the trial court adopted the jury's recommendation and awarded Buyers treble damages in the amount of $15,000.00. The court also awarded attorney's fees in the amount of $5,000.00, for a total award of $20,000.00. Post-trial motions filed by both parties were denied by the trial court and judgment was entered on the docket.

Sellers phrase their first issue on appeal as follows:

A. DID THE TRIAL COURT ERR IN FAILING TO GRANT [SELLERS'] MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL WHERE THE [BUYERS] CLEARLY FAILED TO MEET THEIR REQUISITE BURDEN OF PROOF, CLEAR AND CONVINCING EVIDENCE?

Sellers' Brief at 2. Although the remedy for failure to sustain the burden of proof is judgment notwithstanding the verdict—not the grant of a new trial—we will assume that

Buyers allege in the alternative that, even if Buyers presented a prima facie case of fraud, given the testimony and other evidence presented at trial, the jury's verdict was against the weight of the evidence. We will consider each claim separately.

■ Sellers first claim judgment notwithstanding the verdict should have been granted in their favor because Buyers failed to prove one or more of the elements of fraud by clear and convincing evidence. We do not agree. When reviewing an order denying a motion for judgment notwithstanding the verdict, we must consider all the evidence received, including evidence improperly admitted, and decide "whether there was sufficient competent evidence to sustain the verdict." *Pirozzi v. Penske Olds–Cadillac– GMC, Inc.*, 413 Pa.Super. 308, 311–313, 605 A.2d 373, 375 (1992). It is not within this Court's province to weigh the evidence or to render a judgment as to credibility of evidence. *Ingrassia Construction Company, Inc. v. Walsh*, 337 Pa.Super. 58, 61, 486 A.2d 478, 480 (1984). Rather, we must afford the verdict winner the benefit of every inference which may reasonably be drawn from the evidence and reject all unfavorable testimony and inferences. *Pirozzi*, 605 A.2d at 375. "Judgment notwithstanding the verdict may be granted only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper." *Id.* "If there is any basis upon which the jury could have properly made its award, the denial of the motion for judgment n.o.v. must be affirmed." *Smith v. Renaut*, 387 Pa.Super, 299, 305, 564 A.2d 188, 191 (1989).

■ In real estate transactions, fraud arises where a seller knowingly makes a misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose. *DeJoseph v. Zambelli*, 392 Pa. 24, 25–26, 139 A.2d 644, 647 (1958). Fraud is a generic term used to describe "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Moser v. DeSet-*

*ta*, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991). To recover on a claim of fraud a plaintiff must prove by clear and convincing evidence six elements:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994) (footnote omitted). Concealment of a material fact can amount to actionable fraud if the seller intentionally concealed a material fact to deceive the purchaser. *Moser*, 589 A.2d at 682; *Wilson v. Donegal Mutual Insurance Company*, 410 Pa.Super. 31, 41, 598 A.2d 1310, 1315 (1991). "[A]ctive concealment of defects *known to be material* to the purchaser is legally equivalent to an affirmative misrepresentation." *Sevin v. Kelshaw*, 417 Pa.Super. 1, 11, 611 A.2d 1232, 1237–1238 (1992) (emphasis in original). However, mere silence without a duty to speak will not constitute fraud. *Wilson*, 598 A.2d at 1316.

■ Section 550 of the Restatement (Second) of Torts provides that vendor of real property, or its agent, may be liable for failure to disclose "material information" concerning the property. *Roberts v. Estate of Barbagallo*, 366 Pa.Super. 559, 569, 531 A.2d 1125, 1130 (1987). Section 550 reads:

### § 550 Liability for Fraudulent Concealment

One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

§ 550, Restatement (Second) of Torts. "Liability under this section is encompassed by the Supreme Court's rule that fraud may arise by: 1) the making of a knowingly false

representation of fact; 2) an intentional concealment of true facts which is calculated to deceive the other party; or 3) a nonprivileged failure to disclose certain facts to the other party." *Roberts*, 531 A.2d at 1130. To be liable under section 550 of the Restatement, the concealment must be intentional and must relate to material information. *Id.* at 1130–1131. A misrepresentation or concealment will be considered "material" if "it is of such character that had it not been made, ... the transaction would not have been consummated." *Sevin*, 611 A.2d at 1237. Finally, liability for fraudulent concealment exists if a defendant prevents a plaintiff from making an investigation he would have otherwise made. *Roberts*, 531 A.2D at 1131.

Sellers first claim that no evidence was presented by Buyers that a verbal misrepresentation was made. Rather, Sellers assert that Buyers were merely told that "work was done in the basement" and that Buyers only inquired as to who performed the renovations. Sellers also contend that an intent to conceal the "defect" was not shown and cannot be inferred from the fact that they chose to renovate their basement. Additionally, Sellers claim that they had no knowledge of a defect and that the only defect known to them, the damage caused by flooding, was disclosed to Buyers. Indeed, Sellers argue that, because the area later found defective was exposed during the replacement of the floors during the flood repairs, and the repairmen were able to use sledgehammers to remove the flooring in that same area, the evidence actually demonstrates that no such defect existed. We are unpersuaded by these arguments.

When the evidence is viewed using the above-referenced standard of review, we find that Buyers proved their fraud claim. After a review of the record it is clear that Sellers knew the lally column was removed and there is evidence from which the jury could have concluded that they actually took steps to conceal the replacement of this lack of structural support. Specifically, Patricia Sewak testified that she was neither told that the lally column was removed nor that a temporary jack was concealed in the closet as a substitute support for the structure. She further testified that, had she known of the alteration of the structural support, she and her husband would never have purchased the home. Sellers' former neighbor testified that, upon viewing the renovated basement, he was informed by Mr. Lockhart that a lally column was removed. Although the neighbor told Lockhart that the column could not be removed because "that is what holds up the whole house", Lockhart informed the neighbor, "Yeah, yeah, yeah. It's all right, it's okay." N.T., 5/31/96, at 7, 16. Moreover, an inspector testified that, when he conducted a visible inspection of the house at the request of Buyers, a temporary jack which was depicted in a picture introduced a trial was not in the heater closet in the basement. The inspector testified that, had he observed the illegal use of this jack to provide structural support, he would have brought this fact to the attention of the Buyers.

The contractor who eventually installed a new lally column testified that he ultimately found the temporary jack, which was not bolted in, "buried in the corner" under the steps in the heater closet. He further testified that it was difficult to find the jack in the heater closet because the lighting was poor and the jack was obscured by wires. N.T., 5/30/96, at 65. Finally, the contractor testified that the procurement of any necessary building permits for construction or remodeling were ultimately the responsibility of the homeowner. Uncontradicted evidence at trial revealed that the basement renovations were performed by a contractor whom Sellers had used in the past, that the contractor was paid $12,000.00 cash, and that no building permits were secured prior to the renovations. In *Anderson v. Harper*, 424 Pa.Super. 161, 622 A.2d 319, *alloc. den.*, 535 Pa. 659, 634 A.2d 222 (1993), this Court found knowledge of a latent defect imputed to the sellers of a home, thus rendering them liable for fraud, where the buyers failed to obtain the appropriate building permit prior to making several attempts to correct a problem with the house's septic system. The *Anderson* panel held that sellers of real estate could only be held to have had no knowledge of a latent defect when proper repairs

are made after first obtaining the proper permits.

 Sellers attempt to distinguish *Anderson* is unpersuasive. While it is true that the defendants in *Anderson* made the repairs themselves without obtaining the necessary permits, Sellers were aware that the contractor made the basement renovations without first securing them. Moreover, given the evidence that at least one person had informed Lockhart of the belief that the removal of the lally column was unsafe, and the testimony of the inspector that the temporary jack was not in the heater closet in the basement when he inspected the house, knowledge of the defect can be imputed to Sellers. Finally, Sellers maintain that they relied on others to make the actual renovations to the basement. This may enable them too seek recourse against that contractor, it does not excuse them from liability to Buyers.[1]

 Sellers also claim that the jury's verdict is against the weight of the evidence. The trial court has discretion to grant or refuse a new trial and an appellate court will only reverse that decision if the trial court palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Pirozzi*, 605 A.2d at 375. If the record supports the trial court's decision, the order denying new trial must be affirmed. *Id.* After review of the record, we agree with the trial court that Buyers sufficiently proved their fraud claim such that the verdict does not shock one's sense of justice. Thus, Seller's motion for a new trial was properly denied.

 In their second claim on appeal, Sellers assert that the trial court erred in awarding Buyers treble damages and counsel fees under the UTPCPL. For a claim to arise under section 201–2(4)(xvii) of the UTPCPL, a plaintiff must prove the elements of common law fraud. *See generally, Hammer v. Nikol,* 659 A.2d 617, 619–620 (Pa.Cmwlth. 1995). In essence, Sellers claim that Buyers

were not entitled to treble damages under the UTPCPL because they did not establish the elements of fraud. As we have already rejected this claim, we find Sellers' second claim to be without merit. Thus, the trial court, exercising its discretion under the UTPCPL, properly awarded treble damages.

In their final claim, Sellers allege that reversible error occurred when Buyers' counsel was permitted to cross-examine Charles Lockhart with regard to his prior guilty plea beyond the scope permitted under Pennsylvania law. Sellers claim that the following exchange between Lockhart and Buyers' counsel demonstrates this error:

Q. Is it true, Mr. Lockhart, that on June 30, 1992, you were convicted of theft of services in that you did obtain electrical services [valued] at $1,187.93 provided by the Philadelphia Electric Company by altering or tampering with the public utility meter for the period of October 1990 to October 8, 1991?

A. I never altered with the utility meters. What happened was—

Q. Excuse me. Is it true that you were convicted?

A. Yeah.

Q. Is it true also that on June 30, 1992, as a result of your conviction you were fined $300, directed by the Court to pay costs of $65, and directed to make restitution in the amount of $1,187.93?

A. Yes. And my conviction was pleaded to a ticket.

Q. Excuse me. Is it true or is it not?

A. Oh, yeah, it is.

[BUYERS' COUNSEL]: I have nothing further of this witness, Your Honor.

N.T., 5/30/96, at 216. By including the factual predicate for the crime in the question posed, Sellers' claim that "this impeachment evidence was used in the same manner as propensity evidence." Sellers' Brief at 44.

1. Patricia Sewak testified that Lockhart never told her who renovated the basement and assumed that he did it himself. Although some reference was made to Nick Sarasini as the contractor, Buyers were never provided with receipts for the work. Sarasini was not called to testify at trial and the trial court included the "missing witness" instruction—as to both parties presentation of their case—in its closing charge to the jury.

In further support of this argument, Sellers allege:

> The prejudicial effect of this questioning mislead [sic] the jury. The jurors were only to consider whether or not [Lockhart] was being truthful in his testimony, and not whether or not he himself actually engaged in the tampering/altering of the public utility meter. This line of questioning was improper and pre-disposed the jury to enter a verdict in favor of the Appellees without considering whether or not [Sellers] engaged in fraud in connection with the renovations in their basement. This evidence, in and of itself, does not satisfy the high burden of proof the [Buyers] were required to prove in order to prevail on the issue of fraud. [Sellers'] counsel could not cure the prejudicial effect of this evidence on the jury and severely prejudiced the rights of [Sellers].

*Id.*

We are unpersuaded by Sellers' claim. As noted above, in reviewing a motion for new trial, this Court must determine whether an abuse of discretion or error of law occurred which controlled the outcome of the case. *Pirozzi, supra.* The credibility of a witness may be impeached through cross-examination by reference to prior convictions for offenses involving dishonesty and false statement—*crimen falsi*—if the date of the conviction or last day of confinement occurs within ten years of the trial date. *Commonwealth v. Randall,* 515 Pa. 410, 416, 528 A.2d 1326, 1329 (1987); *see also Carlson Mining Co. v. Titan Coal Co., Inc.,* 343 Pa.Super. 364, 416, 494 A.2d 1127, 1129 (1985) (conviction admissible in both criminal and civil trials). Theft has been specifically identified as a *crimen falsi* crime. *See Commonwealth v. Brown,* 449 Pa.Super. 346, ——, 673 A.2d 975, 978, *alloc. den.,* 545 Pa. 675, 682 A.2d 306 (1996). Lockhart's guilty plea occurred within four years prior to trial and was thus admissible. When a defendant or witness is impeached through the introduction of prior convictions, the name, time, place of the crime, and the punishment may be revealed. *Commonwealth v. Jones,* 250 Pa.Super. 98, 484, 378 A.2d 471, 477 (1977). The question

to which Sellers take issue was nothing more than a verbatim recitation of the citation issued to Lockhart. Additionally, testimony was presented at trial to the effect that Sellers did not actually participate in the renovations of the basement. Indeed, this fact was the very reason Sellers' counsel argued testimony as to the conviction should not be permitted into evidence. Finally, in its instructions to the jury, the trial court clearly advised the jury to consider this testimony only as it related to the credibility of Lockhart. Given the brevity of inquiry as to the conviction, the nature of which Lockhart may have emphasized himself by denying that meters were altered before being interrupted by Buyers' counsel, we cannot conclude that reversible error occurred.

In their sole issue raised in the cross-appeal, Buyers contend that the trial court abused its discretion in limiting their recovery of counsel fees under the UTPCPL to $5,000 when they presented uncontradicted expert testimony at an evidentiary hearing in support of an amount exceeding $22,000. We do not agree.[2] The award of attorney's fees under the UTPCPL is within the trial court's discretion. *Hammer,* 659 A.2d at 620. As such, an award of attorney's fees will not be disturbed on appeal absent a clear abuse. *In re Trust Estate of LaRocca,* 431 Pa. 542, 546–548, 246 A.2d 337, 339 (1968). In a case involving a lawsuit which included claims under the UTPCPL, a panel of this Court held that the following factors should be considered when assessing the reasonableness of counsel fees:

> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the clients from the services; and (4) The contingency or certainty of the compensation.

*Croft v. P. & W. Foreign Car Service,* 383 Pa.Super. 435, 439, 557 A.2d 18, 20 (1989).

---

**2.** Sellers have not provided argument on this issue.

Considering the above factors, the trial court concluded that the time and labor required was not considerable, and that no novel or difficult legal issues were presented. The court also noted that Buyers' counsel spent unnecessary time researching the admissibility of a summary offense for impeachment purposes because Lockhart pled guilty to a third-degree misdemeanor. While the court conceded that counsel had prepared the complaint, responded to Sellers' new matter, a trial memorandum, two motions in limine, and prepared and tried the matter at arbitration and three "half-days" of jury trial, the court noted that counsel took no depositions and prepared only one set of interrogatories. Opinion, 10/30/96, at 17–18. The court also found that an hourly rate of $180.00 was "excessive and therefore not customary in a case without novel or difficult legal factual issues." *Id.* at 18. The court further opined that the facts and legal issues in the case did not require more than modest preparation—a fact that the court believed was consistent with counsel's performance at trial. In considering the amount involved in the controversy and the benefits resulting to the clients, the court opined that the cost to repair the damage caused by the removal of the lally column was only $5,000.00 and treble damages were awarded.[3]

As to the evidence presented at the hearing, the trial court stated that no evidence concerning a fee arrangement was presented and thus there was no evidence that the fees were contingent upon recovery as opposed to payable irrespective of recovery. The court further noted that Buyers' counsel did not testify regarding his fees, but rather, presented only one attorney-witness who had been practicing for twenty-five years, and had tried two UTPCPL cases, the latest of which occurred three years earlier. Although this witness testified that the fees charged by Buyers' counsel were reasonable, the court noted that the witness did not state what fees he charged in his own cases, and that its own opinion was that it was customary in such cases to charge on a one-third contingency basis. Given all these considerations, the court concluded, "Based on (1) this Court's familiarity with customary charges of Bucks County attorneys for similar cases, (2) on the simplicity of the facts of the case and the legal issues presented, and (3) the $5,000 amount in controversy, this Court determined that the fair and reasonable attorney's fees in this case were $5,000.00." Opinion, 10/30/96, at 19.

■■■■■ Given all the evidence presented to the court at the hearing regarding counsel fees, we cannot conclude that the trial court's award constituted a clear abuse of discretion. Clearly, the "jury award should not serve as a cap or a ceiling on the amount of counsel fees awarded to the prevailing party's attorney." *Croft*, 557 A.2d at 20. In the present case, however, the "amount in controversy" was not the only factor considered by the trial court. The trial court also relied upon its familiarity with fees charged by local counsel for similar cases, the fact that the hourly rate charged by counsel, vis-a-vis the customary charge, was excessive, and the simplicity of the factual and legal issues. The court also noted that, while Buyers' expert testified that he represented clients in two UTPCPL cases, he did not inform the court of what he charged for his services. "[A]n abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden v. Baker Concrete Construction, Inc.*, 540 Pa. 409, 412, 658 A.2d 341, 343 (1995). Buyers have failed to demonstrate that the award in the present case was the product of any of these circumstances.

Judgment affirmed.

---

3. The court also noted that, because treble damages were allowed by statute, counsel would have expended no further effort in his request for same.