Mark **KORNFELD** and Gary **Kornfeld**, and **K.G.K.K., The Partnership**

v.

**ATLANTIC FINANCIAL FEDERAL,** now by various assignments, **Bankers Trust Company.**

**Rokom, Inc.**

v.

**Atlantic Financial Federal, now by various assignments, Bankers Trust Company.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2003.

Filed Aug. 5, 2004.

Robert C. Heim, Philadelphia, for Bankers Trust.

Steven M. Greenwald, Wilkes-Barre, for Atlantic Financial.

Before: TODD, BENDER and BECK, JJ.

BECK, J.

¶ 1 After a bench trial and the denial of post trial motions, the trial court entered judgment on a $13,000,000 verdict in favor of plaintiffs-appellees Mark Kornfeld, Gary Kornfeld, KGKK, a general partnership, and Rokom, Incorporated (appellees), and against defendant-appellant Bankers Trust Company (the Bank). We decide whether the award was proper under the applicable mortgage satisfaction statutes, 21 P.S. §§ 681 and 682 (the Act of 1715). We affirm in part, and vacate and remand in part.

### -FACTUAL BACKGROUND-

¶ 2 In February 1988, appellee Rokom borrowed $2,600,000 and the loan was secured by two mortgages on two parcels of land. In October 1988, Rokom borrowed another $2,000,000, and this loan was also secured by two separate mortgages on two parcels of land. The Bank ultimately purchased these mortgages, and they were paid off in June 1999. On June 10, 1999, Jim Reinert, acting with the specific authority of Rokom, spoke with Kenneth Borecki of the Bank to "verify that they received their payoff. And then to ask them about how they were going to satisfy the mortgages." Borecki testified that Reinert said, "I need you to file satisfactions." However, the Rokom mortgages were not satisfied of record until February 2000.

¶ 3 In May 1989, appellees KGKK, Mark Kornfeld and Gary Kornfeld executed two mortgages on certain real estate in order to secure a loan in the amount of $3,800,000. Bankers Trust purchased the mortgages on November 18, 1998, and the loan was paid off in August 1999. Some time in August 1999, and again in October

1999, Robert Kimble, an employee of KGKK and the Kornfelds, spoke with Shari Lewis–Taylor, an employee of the Bank, about "satisfying the liens on the property." Despite these requests, the mortgages were not marked satisfied until December 30, 1999 (the Kornfeld mortgage), and August 2000 (the KGKK mortgage).

¶ 4 After a bench trial, the trial court found that the Bank had failed to satisfy the mortgages within the 45-day time limit set forth in 21 P.S. § 682, and awarded the appellees $13,000,000. Post trial motions, including a request for remittitur, were filed and denied, and judgment was ultimately entered on the verdict. This appeal followed.[1]

■■■ ¶ 5 Our review of the trial court's decision after a non-jury trial is limited to determining "whether the findings of the trial court are supported by the competent evidence and whether the trial court committed error in the application of law." *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 380 (Pa.Super.2002). It is not our role to pass on the credibility of witnesses, as the trial court clearly is in the superior position to do so. *Id.* at 381. The trial judge in this case emphatically reported that he "found the evidence presented by the [appellees] to be credible and gave great weight to" it, and that he "found the relevant and material evidence presented by [the Bank] to lack credibility."

¶ 6 In its appeal, the Bank claims the trial court erred when it: 1) awarded penalties under §§ 681 and 682 when there were no damages and no evidence of reprehensible, wanton, or willful conduct, and where at most only a nominal fine would have been appropriate; 2) relied on evidence regarding the financial status of a non-party parent company in determining the amount of the penalty; and 3) found liability when there were no proper requests to record any satisfaction pieces and when appellees did not tender the reasonable fees to record them.

### -LIABILITY-

¶ 7 We address the Bank's last question first, and consider whether the trial court properly found liability under the circumstances of this case. The relevant statutes, otherwise known as the "Act of 1715" provide:

> **§ 681. Satisfaction of mortgage on margin of record or by satisfaction piece**
>
> Any mortgagee of any real or personal estates in the Commonwealth, having received full satisfaction and payment of all such sum and sums of money as are really due to him by such mortgage, shall, at the request of the mortgagor, enter satisfaction either upon the margin of the record of such mortgage recorded in the said office or by means of a satisfaction piece, which shall forever thereafter discharge, defeat and release the same; and shall likewise bar all actions brought, or to be brought thereupon.
>
> **§ 682. Fine for neglect**
>
> And if any such mortgagee, by himself or his attorney, shall not, within forty-five days after request and tender made for his reasonable charges, return to the said office, and there make such acknowledgment as aforesaid, he, she or they, neglecting so to do, shall for every such offence, forfeit and pay, unto the party or parties aggrieved, any sum not exceeding the mortgage-money, to be

---

1. Appeals were prematurely filed from the order denying post trial motions. Upon direction from this Court, counsel filed praecipes to enter judgment on the verdict.

recovered in any Court of Record within this Commonwealth, by bill, complaint or information.

21 P.S. §§ 681–682 (Purdon 2001) (footnotes omitted).[2]

■ ¶ 8 There is no question here that the appellees paid off the mortgages, were entitled to satisfaction, and that satisfaction did not take place within 45 days of the appellees' alleged requests. However, the Bank claims that appellees' oral requests for satisfaction were vague and insufficient to support the trial court's finding of liability, especially in light of the new statute's requirement of written requests. However, the clear language of § 682 places no such condition on liability. Our Supreme Court has recently confirmed that a verbal request for satisfaction suffices to trigger the duties of the mortgagee under § 682. *O'Donoghue v. Laurel Savings Ass'n,* 556 Pa. 349, 358, 728 A.2d 914, 917–18 (1999). Though appellant argues that there was never a clear understanding between the parties regarding satisfaction, the record belies this position.

¶ 9 Testimony at trial, viewed in the light most favorable to the verdict winners, established that appellees made the required requests for satisfaction of the mortgages securing the Kornfeld, KGKK and Rokom loans, and that the Bank's representatives understood these requests. With regard to the Rokom loan, Rokom's representative Reinert spoke with the Bank's representative Borecki in June 1999, just days after the loan was paid off. Borecki confirmed the payoff and that appellees were entitled to satisfaction. Reinert testified, "[Borecki] indicated that the funds had been received and...we discussed how Bankers Trust was going to satisfy their outstanding loans."

¶ 10 Reinert then offered to prepare satisfaction pieces to assist the Bank in the satisfaction process, but Borecki stated that "outside counsel" would take care of the satisfaction pieces. Whether or not Borecki himself understood the *procedure* for satisfaction, the Bank cannot reasonably assert that Reinert had not made a request for satisfaction during the June 1999 conversation. Indeed, Borecki testified that he was not familiar with the

---

**2.** There is no dispute that the Act of 1715, as set forth in §§ 681 and 682, applies in the instant case. However, these statutes were repealed and replaced, effective February 8, 2003, by 21 P.S. § 721–6 (notice to satisfy; damages for failure to satisfy). Section 721–6 substantially changed the mortgage satisfaction law and, *inter alia,* now requires that the mortgagor's request for satisfaction be in writing, in a prescribed form set forth in the statute. In pertinent part, § 721–6 provides:

(a) **Notice to satisfy.**—After the entire mortgage obligation as well as all required satisfaction and recording costs have been paid to the mortgagee, the mortgagor may send a notice to the mortgagee to present for recording a satisfaction piece to avoid damages.

(b) **Delivery.**—The notice to satisfy shall be sent to the mortgagee by certified or registered mail, return receipt requested...

(c) **Form.**—The notice to satisfy shall be in substantially the following form:

\* \* \* \* \* \*

(d) **Penalty for failure to satisfy.**—

(1) If, within 60 days of the mortgagee's receipt of:

(i) payment of the entire mortgage obligation and all required satisfaction and recording costs; and

(ii) the first written request by the mortgagor for the satisfaction piece delivered and in substantially the form described in this section,

the mortgagee fails to present for recording to the office where the mortgage was recorded a satisfaction piece as described in [21 P.S. § 721–5] or the mortgage is not otherwise satisfied, the mortgagee shall forfeit and pay to the mortgagor a penalty in a sum not exceeding the original loan amount...

21 P.S. § 721–6.

satisfaction process, and had made an appointment with outside counsel in order to discuss it, just days after his conversation with Reinert. Nonetheless, it is clear that satisfaction of the mortgages did not take place until August 2000, well over 45 days after the June 1999 conversation. Therefore, the elements of request and untimely satisfaction as required for liability under § 682 were met with regard to appellee Rokom.

¶ 11 In addition, KGKK and the Kornfelds' representative Kimble testified that he spoke with Shari Lewis–Taylor from the Bank, in August 1999 and again in October 1999, regarding satisfaction of the Kornfeld and KGKK mortgages, which loans had also been paid off in June 1999. Although Kimble testified that he had talked with Lewis–Taylor about "satisfying the liens on the property," the mortgages were not satisfied within 45 days of the conversations. We find the record supports the trial court's determination that the Kornfelds and KGKK requested satisfaction as required by § 682, and that satisfaction was not recorded within 45 days of those requests.

¶ 12 The Bank further argues that liability under § 682 should not attach because appellees did not tender payment of satisfaction fees as required by § 682. The trial court found that appellees "tendered

to Defendant all that was necessary for Defendant to satisfy all mortgages of record." With respect to the Kornfeld and KGKK transactions, Kimble and Lewis–Taylor agreed that the Bank would pay the filing fees to satisfy those mortgages. With respect to the Rokom mortgages, appellees tendered the fee for satisfaction by specifically setting aside money at the closing of the June 1999 payoff. The record therefore supports the trial court's finding of tender under the Act.

¶ 13 The Bank nevertheless argues that there was no evidence of reprehensible or malicious conduct in its failure to timely mark the mortgages satisfied, and thus no liability under § 682 should have arisen.[3] When a mortgagee's refusal to enter satisfaction is "wanton, malicious, obstinate, and entirely unreasonable and unjustifiable," the penalties of § 682 are "deservedly imposed." *Crawford v. Simon,* 159 Pa. 585, 28 A. 491 (1894). However, a wanton and malicious refusal to satisfy is not required in order to establish liability under the Act; a "mere neglect to satisfy" within the time limit set forth is sufficient to create liability. *Graham v. Mt. Airy Building & Loan Ass'n,* 102 Pa.Super. 116, 156 A. 592, 593 (1931). The record in this case does support a finding that the Bank acted negligently.[4] Negligence is a suffi-

3. The Bank specifically argues that its conduct was not reprehensible enough to support the trial court's huge award of damages. In making this argument, the Bank seeks to analogize this case to tort cases involving punitive damages awards, but we do not consider the punitive damages case law to be directly applicable. Section 682 provides the penalty here.

4. The record in this case demonstrates that the Bank showed an unacceptable indifference toward its customers. Shari Lewis–Taylor stated that the Bank "does not have a practice of preparing mortgage satisfaction pieces due to, among other things, the dif-

fering requirements for mortgage satisfactions in the various states in which Bankers Trust does business." Instead, the Bank has a practice of relying on the individual mortgagor to take care of this ministerial act. Apparently, the Bank believes it should not be expected to comply with the procedural requirements of mortgage satisfaction statutes. *Amicus* Pennsylvania Bankers Association joins in this argument, essentially asserting that modern day banks ought not to be bothered with the archaic requirements of mortgage satisfaction, and that if a mortgagor wants a lien marked satisfied, he should go ahead and do it himself. This argument is obviously meritless in light of

cient basis under § 682 to impose liability. We hold the trial court did not err in finding the Bank liable under the Act.

## -DAMAGES-

¶ 14 We now consider whether the trial court's award of $13,000,000 was excessive, and whether it erred in refusing to grant remittitur or a new trial. In addition, we consider the Bank's argument that the trial court's verdict exceeded the statutory ceiling contained in § 682.

¶ 15 First, we note that remittitur, or reduction of a damages award, is appropriate where a verdict is plainly excessive and exorbitant, or when it shocks the sense of justice so as to suggest it was influenced by partiality, prejudice, mistake or corruption. *Pioneer Commercial Funding Corp. v. American Fin. Mortg. Corp.*, 797 A.2d 269, 290 (Pa.Super.2002), *appeal granted*, 576 Pa. 614, 840 A.2d 989, 2003 WL 22850022 (Dec. 2, 2003). We review the trial court's decision to deny remittitur for an abuse of discretion or error of law. *Bindschusz v. Phillips*, 771 A.2d 803 (Pa.Super.2001). We consider whether the verdict shocks the sense of justice such that the trial court should have granted remittitur as a matter of law. *Bey v. Sacks*, 789 A.2d 232 (Pa.Super.2001). We must, of course, "give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence." *Ferrer v. Trustees*, 573 Pa. 310, 344, 825 A.2d 591, 611 (2002) (quoting *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243, 1257 (1983)). However,

the plain language of §§ 681 and 682, and surely contributed to the trial court's ire. Though the revised statute does place more of the paperwork burden on the mortgagor than did the Act of 1715, the latter statute clearly required the *mortgagee* to take the

[w]e do not read our admittedly circumscribed standard of review so as to preclude this Court from ever finding that a trial court abused its discretion in denying remittitur. Although prudence dictates that we exercise our authority sparingly, appellate courts are not powerless to grant remittitur in instances where the verdict is substantially larger than that which the plaintiff's evidence can sustain.

*Smalls v. Pittsburgh–Corning Corp.*, 2004 PA Super 31, ¶ 15, 843 A.2d 410.

¶ 16 We hold that this case presents one of those rare instances where "the verdict is substantially larger than that which the plaintiff's evidence can sustain," and the trial court abused its discretion in denying the request for remittitur. With regard to the penalty authorized by § 682, "the amount of the penalty is not fixed by statute (except as to its top limit), but is to be determined in the court of record." *Krevolin v. Williams*, 160 Pa.Super. 411, 51 A.2d 422, 425 (1947). However, "the penalty found shall bear a proper relation to the circumstances and condition surrounding the neglect to satisfy, and [the] penalty cannot be capriciously or arbitrarily imposed." *Id.*

¶ 17 "Granting that there is a distinction between damages and penalties, that the former are awarded as compensation to the aggrieved party and the latter are imposed with the primary object of punishing the offender, the penalty fixed by the Act of 1715 is intended to accomplish both purposes." *Werner v. Automobile Fin. Co.*, 347 Pa. 217, 219, 31 A.2d 898, 899 (1943) (citation omitted). However,

necessary steps to satisfy the mortgage upon request. The statute applied to all mortgagees operating within Pennsylvania, and the Bank is not exempt because it is big and busy.

the "broad limitation of this act, that the penalty shall not be more than the face of the mortgage, . . . implies that the amount assessed will be determined by a consideration of the circumstances." *Id.* Though a plaintiff is not required to prove that he has suffered actual damages in order to make out a case of liability under § 682, "it does not follow that actual damages and other circumstances are not elements for consideration in determining the penalty to be imposed." *Id.* at 220, 31 A.2d at 899. The statutory ceiling of § 682 does not permit the fact finder to fix any amount it wishes, "however capricious it might be. Certainly the actual injury to plaintiff is a matter for consideration. Among the circumstances to be considered are also the attitude and conduct of the defendant with reference to the act." *Id.*

¶ 18 It is clear that the trial judge was outraged by the Bank's "cavalier" attitude towards its statutory obligations. He stated "[i]t was obvious to this court that Defendant could care less [sic] as to how they treated the Plaintiffs and this demeanor was clear throughout their testimony. The court found Defendant's testimony to be disingenuous and at times quite offensive." The trial court believed that anything less than the amount awarded would have been merely "a slap on the wrist" in light of the Bank's assets and net worth.

¶ 19 We agree that the Bank handled this matter in an improper manner. The record indicates that the Bank was negligent. Its procedures were sloppy. At worst, the Bank had a pattern and practice of avoiding and being indifferent to its statutory obligations, and at best, it improperly trained and supervised its employees with regard to those obligations. Section 682 was designed precisely to punish such misbehavior. But our careful review of the record reveals that the enor-

mous verdict in this case did not bear any reasonable relationship to the actual damages suffered by the appellees as a result of the Bank's failure to timely satisfy the mortgages.

¶ 20 Indeed, the evidence indicates that appellees were neither hindered in their business practices nor embarrassed as a result of the Bank's failure. The Kornfelds themselves testified that they suffered no actual damages. Furthermore, nothing in the record indicates that the Bank acted out of malice, or was wanton in its misconduct, or that it achieved any corporate gain by its inaction. In the face of this record, we cannot sustain a $13,000,000 windfall in appellees' favor. *Compare Specktor v. Specktor,* 158 Pa.Super. 323, 44 A.2d 767 (1945) (where the plaintiffs had been embarrassed and hindered in the sale of their property by the presence of the unsatisfied mortgage, and there was no justification for the mortgagee's failure, a verdict for half the amount of the mortgage was not excessive).

¶ 21 The trial court's award of $13,000,000, in addition to being excessive in light of the evidence presented, also exceeded the penalty cap set forth in § 682. The trial court erroneously concluded that the "total sum of money secured by these mortgages was . . . $16,800,-000[.]" The three loans were secured by six mortgages and the trial court incorrectly combined the face amount of the *mortgages* to achieve a maximum penalty of $16,800,000. He thus determined that his verdict of $13,000,000 was below the statutory maximum. This was error.

¶ 22 Section 682 authorizes a penalty of "any sum not exceeding the mortgage-money." The term *mortgage-money* refers to the original amount of the loan. *See Krevolin v. Williams, supra* ("mortgage money" was $1,800 where the original amount of the loan was $1,800); *Levin v.*

*Weissman,* 594 F.Supp. 322 (E.D.Pa.1984), *aff'd,* 760 F.2d 258 (3d Cir.1985) (penalty of $200,000 corresponded to original amount of loan, not the combined value of two separate $200,000 mortgages securing payment of that loan).[5] In this case, there were three loans secured by the mortgages held by the Bank, one for $3,800,000 to the Kornfelds and KGKK, one for $2,600,000 to Rokom, and one for $2,000,000 to Rokom, for a sum total of $8,400,000. The statutory ceiling for a penalty in this case is therefore $8,400,000. For this additional reason, we remand for a new trial on damages only, before a different trial judge.[6]

¶ 23 Order denying post trial motions affirmed in part and reversed in part; verdict vacated and matter remanded for a new trial on damages before a different trial judge. Jurisdiction relinquished.

---

**5.** In the revised satisfaction statute, the "mortgage money" reference has been replaced by language authorizing "a penalty in a sum not exceeding the original loan amount." 21 P.S. § 721–6(d)(1)(ii).

**6.** Due to our decision to remand for a new trial on damages, we need not decide the Bank's additional arguments on appeal, or the appellees' cross-appeal for additional damages.