**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAN M. CHASE, PERSONAL REPRESENTATIVE OF THE ESTATE OF CHRIS S. CHASE, CHRIS S. CHASE FAMILY ENTERPRISES, LLC, AND LARRY D. FRAZEE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| DAVID M. CREEGAN | |
| Appellee | No. 1681 WDA 2015 |

Appeal from the Judgment Entered October 16, 2015
In the Court of Common Pleas of Bedford County
Civil Division at No(s): 136 for 2012

✳✳✳✳✳

| | |
|---|---|
| JAN M. CHASE, PERSONAL REPRESENTATIVE OF THE ESTATE OF CHRIS S. CHASE, CHRIS S. CHASE FAMILY ENTERPRISES, LLC, AND LARRY D. FRAZEE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| DAVID M. CREEGAN | |
| Appellant | No. 1757 WDA 2015 |

Appeal from the Judgment Entered October 16, 2015
In the Court of Common Pleas of Bedford County
Civil Division at No(s): 136 for the year 2012

J-A23014-16

BEFORE: LAZARUS, J., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 04, 2017**

Jan M. Chase, Personal Representative of the Estate of Chris S. Chase,[1] Chris S. Chase Family Enterprises, LLC., and Larry D. Frazee (collectively "Plaintiffs/Sellers") appeal and David M. Creegan (Creegan/Buyer) cross-appeals from the judgment entered on the jury's verdict in favor of Creegan in the amount of $126,000.00, after the trial court denied Plaintiffs' and Creegan's post-trial motions. After careful review, we affirm.

On January 29, 2008, the parties entered into a "contract for deed"[2] whereby Plaintiffs agreed to sell Creegan a 448.75-acre tract of land located at 557 Bedford Valley Road, in Londonderry Township, Bedford County. Although the title abstract attached to the parties' agreement of sale and oil and gas leases on the tract indicated that the property consisted of 448.75 acres, it actually consisted of 246.25 acres. The parties agreed upon a sale price of $225,000.00, and that all payments would be made by January 1, 2010. Installment payments of $25,000.00 were due by Creegan upon execution of the agreement and by January 9, 2009; and a balloon payment

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Plaintiff Chris Chase passed away during the pendency of the action.

[2] Although the actual document is titled "Contract for Deed," we have chosen to use the more universal term, "agreement of sale," throughout this memorandum.

- 2 -

was due by January 1, 2010, which included the remainder of the purchase price and 6% interest. In addition, Creegan was to pay all taxes and assessments levied against the property.

In the event that the agreement was terminated, Creegan was required to return the property in "substantially the same condition" as it existed on the sale date. In the event of default, Creegan was to forfeit any and all payments made under the terms of the contract, including taxes and assessments.

Creegan took immediate possession of the premises on the date of sale and tendered a check to Sellers in the amount of $18,750.00. The check was returned for insufficient funds. In early February 2008, Creegan discovered the acreage discrepancy after reviewing a property survey that had been prepared in October 2007 for Plaintiff Chris Chase by witness, Rex Clark. Creegan later wired funds to Plaintiffs to make up for the returned check and for the remainder of the down payment. On March 8, 2010, Plaintiff Chris Chase sent Creegan a letter acknowledging that the parties had met face-to-face to discuss Creegan's current default status on the contract and, if Creegan paid $25,000.00 (principal and interest) by April 7, 2010, that the deadline for the final payment would be extended to October 7, 2010. The letter also indicated that the interest rate would retroactively increase from 6% to 7%, effective January 1, 2010.

On February 25, 2011, Plaintiffs sent Creegan a letter reminding him that his final payment was still past due and extending his pay-off date to

September 10, 2011, under three conditions: (1) payment of $32,000.00 by March 10, 2011; (2) acknowledgment that the amount of land sold to him was actually 246.25 acres; and (3) return of a signed copy of the letter to Plaintiffs. On May 13, 2011, Plaintiffs gave Creegan written notice that final payment was due in the amount of $214,502.25 and demanded immediate possession of the property if payment was not tendered. On May 12, 2011, Kristin M. Banasick, Esquire, notified Creegan by letter that she had been advised by Plaintiffs that he was still in default, and that according to the parties' agreement, "if the default continues for an additional period of fifteen (15) days, you are to surrender the premises and Mr. Chase may repossess the property." Letter to Creegan, 5/12/11.

On February 6, 2012, Plaintiffs filed an action in ejectment against Creegan, seeking the court to "restor[e] plaintiffs to the possession of the . . . property" and "for costs, counsel fees and such other and further relief this Court deems just and appropriate." Plaintiffs' Complaint, 2/6/12, at 6. In response, Creegan filed an answer, new matter and three counterclaims: Counterclaim I (Fraudulent Misrepresentation as Inducement to Enter Contract – damages);[3] Counterclaim II (Fraudulent Misrepresentation as

---

[3] Creegan filed two fraudulent misrepresentation counterclaims. The first claim sought reimbursement of the funds he paid toward the agreement of sale and for damages for improvements he made to the property. The second claim sought reformation of the contract and specific performance with a reduced price reflecting the correct amount of acres of the tract.

Inducement to Enter Contract – specific performance); and Counterclaim III (Unjust Enrichment). Creegan claimed that Plaintiffs "intentionally misrepresented the acreage of the property sold subject to the contract as containing 448 acres." Creegan Answer, New Matter, and Counterclaim, 4/27/12, at ¶19. Creegan also averred that after he was induced to buy the property (which he believed to consist of 448 acres) and discovered the acreage discrepancy, Plaintiffs told him to "continue with the payments under the contract with the assurance that the inaccuracy would be addressed." *Id.* at ¶23. Finally, Creegan asserted that based upon Plaintiffs' assurances, he "invested substantial sums of money in improving the property," including a cabin, well, fencing and gating, and road improvements. *Id.* at ¶26.

> In their answer to Creegan's counterclaims, Plaintiffs averred:
>
> It is admitted the Counterclaim defendants had the property surveyed in 2007 by Rex E. Clark, R.S. It is denied the Counterclaim defendants misrepresented the acreage to the Counterclaim plaintiff. To the contrary, **prior to closing on January 29, 2008, the discrepancy in the acreage was openly discussed and a copy of the survey was provided to Counterclaim plaintiff indicating the actual acreage being sold.**

Plaintiffs' Answer to Counterclaim, 5/21/12, at ¶ 20 (emphasis added). In response to Creegan's first set of interrogatories and request for production of documents, Plaintiffs gave the following additional information to support paragraph 20 of their answer:

> The plaintiffs [including Larry Frazee] along with the defendant gathered at a table in the basement of [4976 White Rock Road,

Friendsville, Maryland]. A copy of the survey prepared by Rex Clark . . . was provided and reviewed by the parties along with the Purchase Agreement[.] Both parties reviewed and agreed to the documents provided by and to them prior to closing.

Plaintiffs' Answers to Interrogatories, 1/31/13, at ¶ 24(d).

On June 11, 2015, Plaintiffs filed a motion for judgment on the pleadings, seeking immediate possession of the premises. On August 17, 2015, immediately prior to the start of trial, the court entered an order: dismissing, with prejudice, Creegan's Counterclaim II (Fraud – specific performance) due to the fact that he was "unable to provide any competent evidence regarding the value of the real property to seek reformation and specific performance of the contract;" granting judgment on the pleadings in favor of Plaintiffs, ejecting Creegan from the premise and giving Plaintiffs possession of the property; and denying the parties' request for counsel fees and costs.[4] **See** Order, 8/17/15, at ¶¶ 1-3; **see also** N.T. Jury Trial, 8/17/15, at 38, 54-55. After a two-day jury trial held on August 17-18, 2015, the court entered a verdict in favor of Creegan for $126,000.00 in damages. The verdict slip denoted that the jury awarded Creegan

_____

[4] The court determined that since Plaintiffs were out of possession and Creegan conceded he had not performed under the contract, Plaintiffs were entitled to immediate possession in their ejectment action.

$68,000.00[5] for fraud in the inducement (damages) and $58,000 for unjust enrichment.

Post-trial motions were filed by both parties and denied by the court on October 6, 2015. On October 22, 2015, Plaintiffs filed a notice of appeal; on October 30, 2015, Creegan filed a notice of cross-appeal.[6] The court entered an order requiring Plaintiffs and Creegan to file Pa.R.A.P. 1925(b) concise statements of matters complained of on appeal, with which the parties complied. This timely appeal and cross-appeal follow.

On appeal, Plaintiffs present the following issues for our consideration:

> (1) Did the trial court err in refusing to grant judgment in favor of the plaintiffs on the counterclaim for unjust enrichment where it was conclusively established that the relationship of the parties was founded upon an express written contract?
>
> (2) Did the trial court err in refusing to grant judgment in favor of the plaintiffs on the counterclaim for fraud in the inducement of a real estate contract where the alleged misrepresentation was the quantity of acreage, a defect that was readily determinable by a reasonable inspection?
>
> (3) Did the trial court err in precluding the testimony of two liability witnesses where both were identified as persons with first-hand knowledge of the contract and/or the property in response to an interrogatory and as liability witnesses in both of Plaintiffs' Pre-Trial Statements on the

---

[5] This figure represents the payments that Creegan made to Plaintiffs under the agreement of sale. The payments were in the form of six separate checks, dated 1/29/08, 1/29/08, 11/12/08, 12/1/08, 2/09 and 4/10.

[6] **See** Pa.R.A.P. 903(b) (cross appeals may be filed within 14 days of date on which first timely notice of appeal served).

basis of an incomplete answer to another interrogatory, where [Creegan] made no effort to determine what information the witnesses possessed through formal or informal discovery?

(4)     Did the trial court err by refusing to reduce the verdict or to give binding instructions to the effect that [Creegan] could not recover damages for fraud in the inducement that were incurred after he had actual knowledge of the correct quantity of acreage where the fraud claim was based on a misrepresentation of the quantity of acreage?

(5)     Did the trial court err by refusing to give the jury an instruction regarding a rule of construction for interpreting a legal description when the metes-and-bounds description conflicts with the quantity of land, where the alleged misrepresentation was contained in exactly that type of legal description?

(6)     Did the trial court err by precluding the Plaintiffs' claim for damages or mesne profits on [the] basis of a label in the caption where the facts alleged in the complaint gave rise to a claim for either?

On cross-appeal, Creegan presents the following issues for our review:

(1)     Whether, under Pennsylvania law, the Honorable Trial Court erred by entering a compulsory nonsuit on Count II of [Creegan's] Counterclaim and then declining to remove said compulsory nonsuit where: 1) similar to Count I of [Creegan's] Counterclaim upon which the jury found in [Creegan's] favor, Count II of the Counterclaim alleged fraud in the inducement but, in the alternative, requested modification and specific performance of the underlying Contract for Deed to reflect the true acreage of the Property in question – 246.25 acres – rather than the 448[.75] acres fraudulently misrepresented by the [Plaintiffs] to [Creegan]; 2) such a request for a conditional verdict is authorized under Pennsylvania law; 3) [Creegan] was prepared to testify to the appropriate reformed purchase price at the time of trial; but 4) on the morning of trial, and only moments prior to counsels' slated delivery of opening statements, the Court very unexpectedly entered a compulsory nonsuit on Count II of

[Creegan's] Counterclaim, *sua sponte*, without any testimony being taken in Court.

(2) Whether, under Pennsylvania law, the Honorable Trial Court erred by granting [Plaintiffs'] motion for judgment on the pleadings relative to [Creegan's] sole action in ejectment on the basis of the compulsory nonsuit that was improperly entered on Count II of [Creegan's] Counterclaim where: 1) [Plaintiffs'] motion for judgment on the pleadings was filed nearly three years to the day after the relevant pleadings were closed; 2) five days prior to trial, the Court verbally denied [Plaintiffs'] motion but then reversed course only mere moments before the commencement of trial; 3) neither the pleadings nor the evidence presented at trial established the necessary elements to sustain an ejectment action; and 4) the Trial Court declined to vacate the judgment so entered.

I.     Plaintiffs' Claims on Appeal

**A. Unjust Enrichment**

Plaintiffs first assert that the trial court erred in failing to grant judgment in their favor on Creegan's unjust enrichment claim. Specifically, Plaintiffs claim that because they "conclusively established that the relationship of the parties was founded upon an express written contract," Plaintiffs' Brief, at 4, there is no need to imply a contract under the equitable doctrine of unjust enrichment.

> Unjust enrichment is essentially an equitable doctrine. Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred. The elements necessary to prove unjust enrichment are:
>
> > (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The

> application of the doctrine depends on the particular factual circumstances of the case at issue. **In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.**

*Mitchell v. Moore*, 29 A.2d 1200, 1203-04 (Pa. Super. 1999) (emphasis added) (citations and internal quotation marks omitted). Moreover, while unjust enrichment is an equitable remedy, our Court has permitted parties to plead breach of contract and unjust enrichment alternatively, although recovery for both claims is not allowed. *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963 (Pa. Super. 2009). Finally, a victim of fraud in the inducement has two options: (1) rescind the contract, or (2) affirm the contract and sue for damages. *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1184 (Pa. Super. 2005) (citation omitted).

Instantly, the jury determined that Creegan was entitled to rescind the contract due to Plaintiffs' fraud in the inducement. Rescission, an equitable remedy, involves a disaffirmance of the contract and a restoration of the status quo; whereas, the recovery of damages, which is a legal remedy, involves an affirmance of the contract. *Wedgewood Diner, Inc. v. Good*, 534 A.2d 537, 539-39 (Pa. Super. 1987) (citing 40 A.L.R. 4th 627, 630-31 (1985)). Accordingly, the parties were properly restored to their positions prior to entering into the agreement; Plaintiffs were given possession of the property and Creegan was reimbursed all his monies paid under the agreement.

Creegan, however, also testified at trial that Plaintiffs received the benefit of deer hunts on the property worth $11,500.00 in addition to substantial improvements he made to the property, including building an $84,500.00 log cabin, expending $6,038.10 to drill a potable water well, incurring $6,620.00 in expenses to erect over 4,000 linear feet of fencing and gating, and making $19,494.39 in road improvements. The jury concluded that where Plaintiffs benefitted from these improvements, in order to be equitable, Creegan was entitled to restitution for these improvements. *See* Restatement (Second) of Contracts, § 376 (restitution when contract is voidable). Thus, based on the evidence substantiating the improvements, which consisted of invoices, photographs, and check records, we cannot say that the jury's decision to award damages was unsupported in the record or demonstrably capricious. Restatement (Second) of Contracts, § 371(b) (measure of restitution interest to extent which other party's property has bene increased in value); **Robbins v. Kristofic**, 643 A.2d 1079 (Pa. Super. 1994).

## B. Fraud

Plaintiffs also claim that the court should have entered judgment in their favor on Creegan's fraud counterclaim. Specifically, they assert that because the acreage discrepancy was "a defect that was readily determinable by a reasonable inspection," Plaintiffs' Brief, at 4, Creegan should not have succeeded on this counterclaim.

In order to void a contract due to an intentional or fraudulent misrepresentation, the party alleging fraud must prove, by clear and convincing evidence:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

***Bortz v. Noon***, 729 A.2d 555, 560 (Pa. 1999), *citing **Gibbs v. Ernst***, 647 A.2d 882, 889 (Pa. 1994). It is not enough simply to assert that a statement was "fraudulent" and that reliance upon it induced some action. ***Gruenwald v. Advanced Computer Applications, Inc.***, 730 A.2d 1004, 1014 (Pa. Super. 1999). It is also not sufficient to aver that a knowingly false statement was made for the purpose of misleading another into reliance upon it. ***Sewak v. Lockhart***, 699 A.2d 755, 759 (Pa. Super. 1997). Before fraud will be found, a plaintiff must demonstrate that he justifiably relied on the false statement. ***Id.*** To be justifiable, reliance upon the representation of another must be reasonable. ***Drelles v. Manufacturers Life Insurance Co.***, 881 A.2d 822 (Pa. Super. 2005).

In a case of fraud in the inducement, "the party proffering evidence of additional prior representations does not contend that the representations were omitted from the written agreement, but, rather, claims that the representations were fraudulently made and that 'but for them' he would never have entered into the agreement." ***Blumenstock v. Gibson***, 811

A.2d 1029, 1036 (Pa. Super. 2002); *see* Restatement (Second) of Contracts, § 162(1) ("A misrepresentation is fraudulent if the maker intends his assertion to induce a party to manifest his assent and the maker: (a) knows or believes that the assertion is not in accord with the facts, or (b) does not have the confidence that he states or implies in the truth of the assertion, or (c) knows that he does not have the basis that he states or implies for the assertion.").

Here, Creegan was provided several documents indicating that the tract he was purchasing consisted of 488.75 acres, when in actuality it was 44% less than that. Specifically, the title abstract attached to the parties' agreement of sale and several oil and gas leases for the parcel stated the incorrect acreage. These documents were provided to Creegan when he agreed to buy the tract. As the trial court points out, it is unreasonable to assume that a buyer, under the circumstances, would be able to discern with the naked eye whether a given tract of land is four hundred or two hundred acres. Moreover, the jury believed Creegan's testimony that he did not discern the acreage discrepancy until *after* he signed the agreement. Therefore, we conclude that Creegan justifiably relied on Plaintiffs' material misrepresentation in purchasing the land. *Cf. Blumenstock v. Gibson*, 811 A.2d 1029 (Pa. Super. 2002) (party could not justifiably rely upon seller's *prior oral representation*s, yet sign real estate contract denying those representations regarding sump pits and pumps being non-operational and unnecessary; fact that seller did not affirmatively disclose pumps'

functionality irrelevant when buyers could have observed physical condition of property and made own reasonable inferences about pumps).

### C. Liability Witnesses

Plaintiffs next claim that the trial court erred in precluding the testimony of two lay witnesses, Plaintiff Larry Frazee and his son, Brian Frazee, whom they allege had first-hand knowledge of a 2004 conversation with Creegan regarding the true acreage of the property. Plaintiffs claim that the trial court incorrectly determined that their testimony should not be permitted at trial because Plaintiffs violated discovery rules by not specifically listing their exact testimony in an answer to an interrogatory.

Prior to trial, Creegan filed a motion *in limine* to preclude the testimony of Brian Freeze claiming that while Brian had been identified in Plaintiffs' pre-trial statement filed in July 2015, he was never identified as an expert and any testimony that Brian could provide would be "wholly irrelevant." Motion in Limine, at ¶¶ 4-8. Because Brian was neither a party to the parties' real estate transaction or present during the singing of the agreement of sale on January 29, 2008, Creegan claimed that his testimony about the parties' agreement would be inadmissible hearsay. *Id.* at ¶ 13. At trial, the court precluded Brian from testifying that he had a conversation with his Father, Larry, and in the presence of Creegan about the acreage discrepancy. N.T Jury Trial, 8/17/15, at 5-6.

In *Gill v. McGraw Electical Co.*, 399 A.2d 1095 (Pa. Super 1979) (en banc), our Court set forth the factors a court must consider in determining

- 14 -

whether or not a witness should be precluded for failure to comply with discovery rules:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified[;] (2) the ability of that party to cure the prejudice[;] (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of cases in the court[; and] (4) bad faith or willfulness in failing to comply with the court's order.

*Id.* at 1102.

Instantly, both Larry and Brian Frazee were listed as witnesses in Plaintiffs' pre-trial memorandum. However, Brian is not mentioned in the Plaintiffs' Answers to Interrogatories as having been present at the "closing on January 29, 2008, [when] the discrepancy in the acreage was openly discussed and a copy of the survey was provided to Counterclaim plaintiff indicating the actual acreage being sold." Plaintiffs' Answer to Counterclaim, 5/21/12, at ¶ 20. Rather, Plaintiffs' answer to that specific interrogatory states, in relevant part:

> The plaintiffs [including Larry Frazee] along with [Creegan] gathered at a table in the basement of [4976 White Rock Road, Friendsville[,] Maryland]. A copy of the survey prepared by Rex Clark . . . was provided and reviewed by the parties along with the Purchase Agreement[.] Both parties reviewed and agreed to the documents provided by and to them prior to closing.

Plaintiffs' Answers to Interrogatories, 1/31/13, at ¶ 24(d).

Therefore, while Creegan had notice that these witnesses may be called at trial to provide testimony with regard to liability and damages, he had no idea until two weeks before trial that the Plaintiffs intended to offer

Brian Freeze's testimony to support their position on the central issue in the case – whether Creegan knew the proper acreage of the tract prior to signing the parties' agreement. *Compare Smith v. Grab*, 705 A.2d 894 (Pa. Super. 1997) (trial court abused its discretion in precluding lay witness testimony, which did not go to core issue of plaintiff's treatment, where witnesses were listed in Plaintiff's response to interrogatories and supplemental pre-trial statement) *with Gill*, *supra* (where appellees did not provide appellant with any notice of expected testimony by expert witnesses, as required by court's pre-trial order, court committed error in permitting witnesses to testify at trial) *and Nissley v. Pennsylvania R.R. Co.*, 259 A.2d 451 (Pa. 1969) (where plaintiff refused to answer interrogatory relating to expert witness it was error to permit witness to testify).

Moreover, to the extent that Larry Freeze was not permitted to testify regarding the alleged conversation he had with Brian and Creegan, the court properly limited his testimony to the facts asserted in Plaintiffs' answer to interrogatories. *See Feingold v. Southeastern PennsylvaniaTransp. Auth.*, 488 A.2d 284 (Pa. Super. 1985) (in absence of bad faith or willful disobedience of discovery rules, most significant considerations are importance of witness' testimony and prejudice to party against whom witness will testify).

**D. Damages for Fraud Incurred After Creegan had Notice of Acreage Discrepancy**

Plaintiffs next claim on appeal that it was error for the jury to award Creegan any damages for fraud in the inducement for the period of time *after* he realized the actual acreage of the property. Instantly, Creegan testified that after he discovered the acreage discrepancy, Plaintiffs told him to continue to pay under the contract with their assurance that the inaccuracy would be addressed. Therefore, it was reasonable for the jury to believe Creegan's testimony and award him damages for Plaintiffs' false assurances even after he discovered the discrepancy. ***Boggavarapu v. Ponist***, 542 A.2d 516, 519 (Pa. 1988) (jury exercises prerogative to believe all, some, or none of evidence presented); ***Foflygen v. Allegheny Gen. Hosp.***, 723 A.2d 705, 712 (Pa. Super. 1999) (questions of credibility and conflicts in evidence are for fact-finder to resolve). Accordingly, we find no merit to this claim on appeal.

### E. Jury Instruction for Misrepresentation of Acreage

Plaintiffs claim that the trial court erred in refusing to instruct the jury on a legal description of the land in metes and bounds terms, rather than solely acres. Plaintiffs claim that there was factual support in the record to warrant a metes and bounds charge, specifically the title abstract, and that such a charge would have "given the jury legal guidance on how to construe th[ose] documents."

> In examining jury instructions, the scope of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to

mislead or confuse rather than clarify a material issue. Error will be found where the jury was probably [misled] by what the trial judge charged or where there was an omission in the charge. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error. In reviewing a trial court's charge to the jury, the reviewing court must look to the charge in its entirety. Because this is a question of law, the court's review is plenary.

*Passarello v. Grumbine*, 87 A.3d 285, 287 (Pa. 2014) (citations, quotation marks, and ellipses omitted).

Here, the majority of the evidence describing the size of the tract of land involved in the parties' dispute used acres as the relevant measurement. While the title abstract attached to the Plaintiffs' complaint did refer to a metes and bounds description of the property, the court concluded that to describe the land in a way other than the more commonly used term of acreage would run the risk of confusing the jury. We agree and find that the court's instruction, as a whole, was adequate and the omission of a metes and bounds charge was not fundamental error. *Passarello*, *supra*; *Pringle v. Rapaport*, 980 A.2d 159, 173 (Pa. Super. 2009) (purpose of charging jury is to clarify issues which jurors must determine).

### F. Preclusion of Recovery for Mesne Profits

In their final claim on appeal, Plaintiffs argue that the court improperly precluded them from seeking mesne profits or damages where "those items

were placed at issue based on the material facts alleged." Plaintiff's Brief on Appeal, at 12.

Mesne profits are defined as "[i]ntermediate profits; profits accruing between two points of time. Profits accruing from land during an intermediate period, such as a period of tortious holding by the defendant in an action in ejectment." 25 Am J2d Eject § 148.

> If a plaintiff in ejectment does not declare or give notice of a claim for mesne profits, he can, after judgment in ejectment, sue in trespass *vi et armis* for such damages. The notice or declaration for mesne profits in the ejectment action is but a permissive right to consolidate a claim for trespass *vi et armis* with the action of ejectment. The Act of 1876, P. L. 95, Pa. Stat. Ann. tit. 12, § 1557, making it lawful for a plaintiff to give notice or declare for mesne profits in an action of ejectment, is permissive and not mandatory, and the Act itself was but declaratory of decisional law.

***Crecium v. McCann***, 67 A.2d 622 (Pa. Super. 1949).

In their ejectment action, Plaintiffs included an *ad damnum* clause seeking "possession of the above-captioned real property, for costs, counsel fees and such other further relief as this Court deems just and appropriate." Plaintiffs' Complaint, 2/3/12, at 27. Plaintiffs, however, did not specifically seek mesne profits in their complaint. ***See Reilly v. Crown Petroleum Co.***, 63 A. 253, 254 (Pa. 1906) (*after* recovery in ejectment, trespass is proper remedy to recover mesne profits of land taken by adverse claimant in

possession of premises). Therefore, Plaintiffs could have timely[7] amended their complaint to include a claim for such profits or filed a separate action for mesne profits, albeit within the appropriate statute of limitations. **Reilly**, **supra**; **Crecium**, **supra**. Accordingly, the court did not err in preluding Plaintiffs from recovering mesne profits in their ejectment action.

    II.    <u>Creegan's Claims on Cross-Appeal</u>

### A. Compulsory Non-Suit on Counterclaim II

Creegan contends that the trial court improperly entered nonsuit on his counterclaim (Count II – Fraud (contract reformation)) at the commencement of trial. Specifically, he asserts that the court prematurely dismissed his counterclaim without first hearing evidence on whether Creegan was entitled to modification of the contract based on a price reflecting the true acreage of the tract.

Here, Creegan failed to produce competent evidence regarding the true value of the property, based on the reduced acreage, to support reformation of the parties' agreement. Under such circumstances, the court properly granted nonsuit on this claim. **See Vicari v. Spiegel**, 936 A.2d

---

[7] The court denied Plaintiffs' last-minute request to amend the *ad damnum* clause to include damages or mesne profits. **Cheskiewicz v. Aventis Pasteur, Inc.**, 843 A.2d 1258, 1266 (Pa. Super. 2004) (leave to amend complaint is within sound discretion of trial court and should be liberally granted; however, where plaintiffs, offhand, sought to add claim outside of legal basis of original complaint, denial of amendment was proper).

503, 509 (Pa. Super. 2007) (standard of review for entry of a nonsuit is well-established, "appellate court reverses only if, after giving appellant the benefit of all reasonable inferences of fact, it finds that the factfinder could not reasonably conclude that the essential elements of the cause of action were established.").[8]

### B. Grant of Judgment on Pleadings in favor of Plaintiffs

Finally, Creegan claims that the trial court improperly granted judgment on the pleadings in favor of Plaintiffs prior to the commencement of trial. Specifically, he contends that the Plaintiffs were not entitled to immediate possession of the property on their ejectment action and that granting the judgment on the eve of trial, when the pleadings had been closed for almost three years, was error.

Pursuant to Pa.R.C.P. 1034, "[a]fter the relevant pleadings are closed, *but within such time as not to unreasonably delay the trial*, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a) (emphasis added). An appellate court will reverse a trial court's grant of judgment on the

---

[8] In any event, the remedies of reformation and rescission both could not have gone before the factfinder; thus, the court properly precluded the remedy of reformation from going before the jury. **See Wedgewood Diner, Inc.**, **supra** at 538 (party cannot, in the assertion or prosecution of his rights, maintain inconsistent positions; to allow party to allow both rescission and reformation of contract for fraud would "allow a double remedy for the same wrong."); **but see** 25 Am.Jur.2d Election of Remedies, § 16 ("where there is nothing more than the mere institution of a suit or proceeding, which is abandoned *or dismissed before judgment*, there is nothing on which to base an estoppel – no benefit and no detriment.").

pleadings only where a clear error of law has been committed or where there were facts disclosed by the pleadings that should have been resolved by the jury. *Gardner v. Erie Ins. Co.*, 691 A.2d 459 (Pa. Super. 1997), *aff'd* 722 A.2d 1041 (Pa. 1999). Here, the trial court did not err in considering Plaintiffs' motion before trial where Creegan has failed to show how the June 2015 filing unreasonably delayed trial or how he was prejudiced by the filing.[9] Pa.R.C.P. 1034(a).

Moreover, having determined that the contract should be rescinded based upon Plaintiffs' fraud, the court properly returned possession of the property to Plaintiffs to restore the status quo[10] *See Wedgewood Diner*, *supra*.

Judgment affirmed.

---

[9] We note that the court set a deadline of July 1, 2015 for all filing of dispositive pre-trial motions. Plaintiffs' motion was timely filed prior to the deadline, on June 11, 2015.

[10] Here, the court prematurely returned possession of the property to Sellers prior to trial and before the jury determined that the contract was voidable for fraud and should be rescinded. However, because the Sellers were entitled to possession of the property upon rescission of the agreement and the return of all monies paid by Buyer, any error was harmless.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2017