J-A24014-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| HOOVER CONTRACTING COMPANY, INC., A CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 1497 WDA 2019 |
| DAVID MCNAUGHTON AND SARAH MCNAUGHTON, TWO INDIVIDUALS | : | |

Appeal from the Judgment Entered September 5, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  AR-15-004756,
GD-15-020762

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:               FILED NOVEMBER 18, 2020

Hoover Contracting Company, Inc. (Hoover Contracting) appeals from the September 5, 2019 order, that entered judgment on the February 22, 2019 jury verdict in Hoover Contracting's favor and on the July 23, 2019 non-jury verdict in favor of David and Sarah McNaughton (the McNaughtons), the homeowners.  After review, we affirm.

The jury verdict was rendered in favor of Hoover Contracting in the amount of $80,000.00, while the non-jury verdict was rendered in favor of the McNaughtons in the amount of $59,506.49.  The trial court explained that the reason for holding both a jury trial and a non-jury trial was due to the fact that a violation of the Home Improvement Consumer Protection Act (HICPA), 73 P.S. §§ 517.1 – 517.18, which is deemed a violation of the Unfair Trade

Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 et seq., does not provide for a right to a jury trial. See Trial Court Opinion (TCO), 12/12/19, at 4 (n. 2).

However, before we are able to address Hoover Contracting's appeal, we are compelled to determine whether the appeal must be quashed pursuant to Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018), in light of the fact that the order appealed from contains two lower court docket numbers that would require the filing of two separate appeals.[1] Upon receipt of the notice of appeal, this Court issued a rule to show cause, directing Hoover Contracting to explain why the appeal should not be quashed. Hoover Contracting complied, explaining:

> In the case at bar, the action was completely consolidated pursuant to Pa.R.C.P. 213(a) because both causes of action arise [] out [of] the same transaction or occurrence, the identities of the parties are identical and the claims and defenses are exactly the same. Both actions arose out of disputes regarding the same contract and included the same claims and defenses with respect to all parties. This is clearly evidenced by the New Matter and Counterclaim filed by Hoover Contracting at docket number GD-15-020762[,] which specifically references docket number AR-15-004756[,] and reiterates the averments of its Complaint in the form of a New Matter and Counterclaim. Likewise, the New Matter and Counterclaim filed by the McNaughtons at docket number AR-15-004756 specifically incorporates by reference their Complaint filed at docket number GD-15-070602 and also reiterates the averments of its Complaint in the form of a New Matter and Counterclaim. Clearly, the identical parties and their identical

_____

[1] Walker states that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." Walker, 185 A.3d at 977.

- 2 -

claims arise out of the same transaction or occurrence and were completely consolidated for all purposes, including appealability. Furthermore, the only Order that would have any effect on both causes of action would be the Order dated March 30, 2016[,] which completely consolidated the causes of action under AR-15-004756[;] however[,] such Order was never entered at docket number GD-15-020762, was consented to by all parties[,] and is not the subject of this appeal. The jury verdict of February 25, 2019 and the nonjury verdict of July 23, 2019[,] and the final Order entering judgment on all of the parties['] claims dated September 5, 2019, from which this appeal arises, were all only docketed at AR-15-004756 and not at GD-15-020762[;] there is no verdict or judgment docketed at GD-15-020762.

Thus[,] it was appropriate to completely consolidate the cases under Pa.R.A.P. 213(a) for all purposes, including appealability[,] and as such [Hoover Contracting] has properly perfected its appeal by filing a timely Notice of Appeal at docket number AR-15-004756 and [the matter] should not be quashed.

Hoover Contracting's Response to Rule to Show Cause, 10/24/19, at 4-5 (unnumbered).

In reviewing the record, we are aware that the trial court here explained in its opinion that it "consolidated docket no. GD-15-20762 into no. AR-15-4756[,] and assigned responsibility for resolving the dispute to [the present judge]." TCO at 4. Furthermore, Hoover Contracting's response to this Court's Rule to Show Cause points out that the two cases were consolidated under AR-15-004756, pursuant to the trial court's March 30, 2016 order, and that the order was not listed on the docket for GD-15-020762; rather, it was only listed on the AR-15-004756 docket. More importantly, the record only contains docket entries for AR-15-04756. There is no list of docket entries contained in the record under GD-15-020762. Moreover, we note that despite the trial court's order providing for consolidation and the lack of a list of docket

entries for GD-15-020762 in the record, the trial court's September 5, 2019 order lists both docket numbers without any reference to the consolidation. Also, the caption on Hoover Contracting's notice of appeal filed with this Court, contained the following:

> No.: AT 15-4756
> AND NOW CONSOLIDATED WITH
> No. GD 15-020762 (at AR 15-004756)

Hoover Contracting's Notice of Appeal, 10/4/19. Accordingly, because of these confusing circumstances, we decline to quash the appeal. Cf. Commonwealth v. Stansbury, 219 A.3d 157 (Pa. Super. 2019) (refusing to quash appeal due to court's misstatement, which operated as a breakdown in the court's operation).

We now turn to the specifics of Hoover Contracting's appeal, which takes issue with the judgment resulting from the non-jury trial. Hoover Contracting's six issues are stated in its brief as follows:

> I. Did the [t]rial [c]ourt make an error of law and abuse its discretion in finding that [the] McNaughtons suffered an ascertainable loss of money as a result of [Hoover Contracting's] violations of HICPA and the UTPCPL when the [j]ury verdict found in favor of [Hoover Contracting] on all of [the] McNaughtons' common law claims for damages and awarded [Hoover Contracting] $80,000.00 on its unjust enrichment claim.
>
> II. Did the [t]rial [c]ourt commit an error of law and abuse its discretion in determining that Hoover Contracting [] was not justified in leaving the project prior to completion despite the McNaughton[s'] failure to make the agreed[-]upon payments in addition to their notice not to return to the job.
>
> III. Did the [t]rial [c]ourt err in determining that [Hoover Contracting's] failure to install the beam pursuant to the

- 4 -

architectural plans resulted in an ascertainable loss of money or property to the McNaughton[]s entitling them to damages under the UTPCPL in light of the fact that the [j]ury found that [Hoover Contracting] had not breached the contract or violated any warranties of workmanship or[] habitability and was not negligent and that the beam reflected in the plans would not fit, was not necessary and [the] McNaughtons would not pay for it.

IV. Did the [t]rial [c]ourt abuse its discretion or commit an error of law in determining that the McNaughton[]s had established any reckless, deceptive conduct that would warrant an award of treble damages under the UTPCPL.

V. Did the [t]rial [c]ourt commit[] an abuse of discretion and error of law in allowing the admission of [d]efense [c]ounsel's legal bills and awarding attorney's fees to the McNaughton[]s which amounts to nearly three times their actual damages.

VI. Did the [t]rial [c]ourt commit an error of law in determining that prejudgment interest on an award under quantum meruit was discretionary and not a matter of right.

Hoover Contracting's Brief at 6-7.

We next set forth our standard and scope of review, which are well-settled.

Our review of the trial court's decision after a non-jury trial is limited to determining whether the findings of the trial court are supported by the competent evidence and whether the trial court committed error in the application of law. It is not our role to pass on the credibility of witnesses, as the trial court clearly is in the superior position to do so.

Ramalingam v. Keller Williams Realty Group, 121 A.2d 1034, 1041 (Pa. Super. 2015) (quoting Kornfeld v. Atl. Fin. Fed., 856 A.2d 170, 173 (Pa. Super. 2004)).

Having reviewed the certified record, the briefs of the parties, the applicable law, and the thorough opinion authored by the Honorable Alan D.

Hertzberg of the Court of Common Pleas of Allegheny County, dated December 12, 2019, we conclude that Judge Hertzberg's well-reasoned opinion accurately disposes of the issues presented by Hoover Contracting on appeal and we discern no abuse of discretion or error of law. Accordingly, we adopt Judge Hertzberg's opinion as our own for purposes of appellate review and affirm the judgment from which this appeal arose.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/18/2020

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

HOOVER CONTRACTING
COMPANY, INC.

     Plaintiff,

     vs.

DAVID McNAUGHTON and
SARAH McNAUGHTON,

     Defendants.

CASE NO. AR 15-4756
GD 15-20762

Superior Court docket no.
1497 WDA 2019

**OPINION**

JUDGE ALAN HERTZBERG

COPIES SENT TO:

COUNSEL FOR PLAINTIFF:

MICHAEL FIVES, ESQUIRE
WEXFORD PROFESSIONAL BUILDING I
11676 PERRY HIGHWAY, STE. 1302
WEXFORD, PA 15090

COUNSEL FOR DEFENDANT:

JENNIFER RICHNAFSKY, ESQUIRE
HENRY W. OLIVER BUILDING
535 SMITHFIELD STREET, SUITE 300
PITTSBURGH, PA 15222

COURT OF COMMON PLEAS

2019 DEC 12 AH 9: 51

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

HOOVER CONTRACTING
COMPANY, INC.

      Plaintiff,

      vs.

DAVID McNAUGHTON and
SARAH McNAUGHTON,

      Defendants.

CASE NO. AR 15-4756
GD 15-20762

Superior Court docket no.
1497 WDA 2019

## OPINION

Alan Hertzberg, Judge            Date Filed: December 11, 2019

### I.   Introduction

The purpose of Pennsylvania's Home Improvement Consumer Protection Act is to protect consumers from unscrupulous contractors. Hoover Contracting Company, Inc. admits to flagrant violations of this consumer protection law during performance of home improvements for David and Sarah McNaughton. Hoover Contracting, however, believes the favorable jury verdict in the dispute over how much money is owed from the home improvements immunizes it from any liability under the consumer protection act. Since the Home Improvement Consumer Protection Act does not provide for such immunity, I disagree.

### II.   Background

Brian Hoover, the owner and sole employee of Hoover Contracting Company, Inc., met with the McNaughtons at their home in February of 2015. Mr. Hoover examined the home and discussed the McNaughtons' plans to expand their home by building a new addition with a home office on the first floor and a master bedroom on the

1

second floor. The McNaughtons also proposed to gut an existing bathroom and replace it with two separate, renovated, full bathrooms. Mr. Hoover provided the McNaughtons with several different proposals containing descriptions of the work Hoover Contracting would perform and the "estimated cost for labor/material." Near the end of March, Mr. McNaughton sent Mr. Hoover a text message: "we are good to go" with the proposal that reduced the total estimated cost to approximately $90,000 in exchange for the McNaughtons directly purchasing materials and fixtures from suppliers. Mr. Hoover then introduced the McNaughtons to architect Darrell Kauric, who would prepare drawings needed for the building permit. On May 5, 2015, Mr. Kauric produced the drawings, which became part of the approved building permit. Then, without ever obtaining a home improvement contract signed by the McNaughtons, Mr. Hoover did obtain $20,000 from them before beginning construction of the addition on May 11, 2015.

Mr. Hoover had a verbal agreement to permit the McNaughtons to pay $70,000 as the work progressed and the balance after completion, via refinance of their mortgage. Mr. Hoover, however, also verbally agreed to provide additional improvements or "extras" that were not described in the proposal or the architect's drawings. He agreed to provide the labor to install additional flooring, doors and lighting, renovate the kitchen, replace the gable over the front doorway and replace the siding and shingles on the existing home. Late in June he discussed his price total of $20,425 for the extras with Dave McNaughton, but not with Sarah McNaughton. As the work described in the proposal and the "extras" proceeded further, Mr. Hoover found that he could not continue to carry the cost unless Mr. and Mrs. McNaughton payed him more than the $70,000 he

2

had received. Before paying more, Sarah McNaughton, a certified pubic accountant, requested invoices and other documentation on how the $70,000 had been spent. Mr. Hoover did not provide any documentation and instead decided to leave the job, without completing it, on August 28, 2015. Shortly thereafter, Hoover Contracting sent the McNaughtons a letter "requesting that the balance due to our company of $23,600 be paid in full by or before the 23rd of Sept. 2015." Jury trial exhibit ZZZ. The McNaughtons again requested documentation, which Hoover Contracting did not provide, and no additional payment was made by this deadline.

On October 2, 2015, Hoover Contracting filed a complaint against the McNaughtons at docket no. AR 15-4756 in the arbitration division for "$23,600.00 of Last drawl to complete work need on addition to house, not pd to Hoover Contracting in order for us to continue work." On November 25, 2015 the McNaughtons filed a complaint against Hoover Contracting at docket no. GD 15-20762 for an amount in excess of $35,000 containing counts for breach of contract, breach of warranty, negligence and violation of the Pennsylvania Home Improvement Consumer Protection Act[1]. The McNaughtons filed preliminary objections to Hoover Contracting's complaint, and Hoover Contracting filed an amended complaint that demanded $37,660.00 plus pre-judgment interest for breach of contract and unjust enrichment. Since the Pennsylvania Home Improvement Consumer Protection Act (73 P.S. §§517.1-517.18, "HICPA" hereafter) prevents enforcement against homeowners of contracts that do not comply with HICPA, I dismissed the breach of contract count in Hoover

---

[1] There also were counts for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and the Pennsylvania Fair Credit Extension Uniformity Act.

3

Contracting's amended complaint. The Court consolidated docket no. GD 15-20762 into no. AR 15-4756 and assigned responsibility for resolving the dispute to me.

Immediately after selection of a jury, the parties agreed not to submit the HICPA claim to the jury and for me to decide it at a later date.[2] See transcript of Jury Trial, February 12-22, 2019 ("T" hereafter), pp. 106-108. After 7 days of trial with testimony from 9 witnesses and the admission of multiple exhibits, the Jury decided the unjust enrichment claim in favor of Hoover Contracting for $80,000 and the McNaughtons' breach of contract, breach of warranty and negligence claims against the McNaughtons. When I contacted counsel to schedule a non-jury trial on the HICPA claim, Hoover Contracting argued that the Jury's decision precluded the McNaughtons' HICPA claim. After receiving briefs from the parties, I determined the HICPA claim should proceed to a non-jury trial. Four witnesses testified during the June 11, 2019 non-jury trial. I then found the McNaughtons lost $10,512.57 due to Hoover Contracting's HICPA violations. Pursuant to HICPA, I awarded three times the McNaughtons' losses, $31,537.71, and costs and reasonable attorney fees of $27,968.78 for a total verdict against Hoover Contracting in the amount of $59,506.49. Both Hoover Contracting and the McNaughtons filed motions for post-trial relief. I denied all of the post-trial motions. Only Hoover Contracting has appealed to the Superior Court of Pennsylvania. The remainder of this opinion will address the alleged errors I made that are set forth in Hoover Contracting's Statement of Matters Complained of Pursuant to Pa. R.A.P. 1925 ("Statement of Errors" hereafter).

---

[2] A HICPA violation is deemed a violation of the Unfair Trade Practices and Consumer Protection Law (see 73 P.S. §517.10) and there is no right to a jury trial under the Unfair Trade Practices and Consumer Protection Law. See Fazio v. Guardian Life Ins. Co. of America, 2012 PA Super 273, 62 A.3d 396 (appeal denied 62 A.3d 396).

4

III. Analysis of Topics Being Appealed

A. Compatibility of verdicts

Hoover Contracting's primary allegation of an error by me is that my $59,506.49 non-jury verdict against it is contradictory to the $80,000 jury verdict in its favor. See Statement of Errors, ¶ nos. 1, 2a, 2b, 2d, 4, 6, 10, 13 and 14. The Jury found that there was a contract, but that Hoover Contracting did not breach it, and that Hoover Contracting did not breach any warranties and was not negligent. Hoover Contracting argues that these findings by the Jury mean the Jury found the McNaughtons were not damaged by the HICPA violations. Hoover Contracting also argues the Jury's finding that the McNaughtons were unjustly enriched by $80,000 means the Jury found the McNaughtons were not damaged by the HICPA violations.

The purpose of HICPA is to protect consumers from "unscrupulous contractors." Shafer Elec. & Const. v. Mantia, 626 Pa. 258, 96 A.3d 989 (2014). HICPA's homeowner remedy for violations of the Act by Contractors is Pennsylvania's Unfair Trade Practices and Consumer Protection Law (see 73 P.S. §517.10), which authorizes a "private action to recover actual damages" to any person who "suffers any ascertainable loss of money or property...as a result of" the violation. 73 P.S. §201-9.2. With HICPA containing no provision for a jury trial, a judge likely will be deciding cases alleging violations. See Fazio v. Guardian Life Ins. Co. of America, 2012 PA Super 273, 62 A.3d 396 (appeal denied 62 A.3d 396). Since HICPA contains no provision precluding judges from deciding cases alleging violations after a jury decision on common law claims in favor of the contractor, courts "cannot insert words into [it] that are not there...." Shafer Elec. & Const. v. Mantia, 626 Pa. 258, 270, 96 A.3d 989 , 997. Hence, losing the dispute over

5

how much money is owed from the home improvements should not, under HICPA, result in a forfeiture of the protection provided the consumer by HICPA. Therefore, HICPA does not support Hoover Contracting's position.

The court created doctrines of *res judicata* and collateral estoppel also do not support Hoover Contracting's position. For either doctrine to apply, the issues decided by the Jury would have to be identical to the issues I decided in the non-jury trial. See Gregg v. Ameriprise Financial, 2018 PA Super 252, 195 A.3d 930 at 935-936. But, there is no identity of issues relative to damages because the Jury's verdict against the McNaughtons on liability prevented it from ever reaching the issue of their damages. See Jury Verdict at GD 15-20762 dated 2/22/2019, Question 7. As to Hoover Contracting's argument that the Jury's decision that the McNaughtons were unjustly enriched was also a decision that they were not damaged, the Pennsylvania Supreme Court's description of a contractor's unjustment enrichment claim under HICPA never mentions damages or losses by the homeowner. See Shafer Elec. & Const. v. Mantia, 626 Pa. 258 at 264, 96 A.3d 989 at 993. It is the benefits to the defendant, not the detriments, that are described. Id. An identity of issues also is lacking relative to the entirety of the HICPA claim, since it was not a part of the jury trial.

Furthermore, there was important additional evidence and testimony at the non-jury trial that was not produced during the jury trial. Hoover Contracting, in its closing argument, told the Jury:

> Now, you've heard from the McNaughtons how horrible this is and all the walls are cracked and the ceiling is falling down.
> Where are their pictures? You know? You got all of these problems. You are living in the house. You don't think you could produce one picture to show all of these problems? No. Of course not. You know why?

6

T, p. 1512. During the non-jury trial, the McNaughtons produced a photograph taken after the jury trial that clearly shows cracking in the wall attached to the front living room header, where Mr. Hoover admitted he disregarded the architect's structural design. See transcript of Non-Jury Trial, June 11, 2019 ("NJT" hereafter) pp. 105-107 and non-jury trial exhibit OOO. Hence, even accepting Hoover Construction's argument that the Jury found the McNaughtons were not damaged by the HICPA violations, with the additional evidence that was not presented to the Jury, the issue I decided would not be identical. Therefore, my verdict is not contradictory to the jury verdict and is not erroneous[3].

### B. Causation

Hoover Contracting also alleges my non-jury verdict is erroneous due to lack of a causal connection between the HICPA and/or Unfair Trade Practices and Consumer Protection Law ("UTPCPL" hereafter) violations and the McNaughtons' damages. See Statement of Errors, ¶ nos. 2c and 12. To properly respond, I first must explain the basis for my award of $10,512.57 in actual damages sustained by the McNaughtons. Below is a list of each item of damages with references to testimony from the trial and any exhibits for each.

1. Replace front living room header with beam and provide proper support; T, pp. 1187-1190:                     $ 8,500.00

2. Repair lawn disrupted by construction and pile of debris; T, pp. 696-698; jury trial exhibits JJ and KK:                     $ 1,508.05

---

[3] This certainly is not the only time that a trial judge has made a finding in favor of a party on a statutory claim after a jury finding against that party on common law claims. I am aware of three cases with reported Superior Court decisions where this occurred: Boehm v. Riversource life Ins. Co., 1015 PA Super 120, 117 A.3d 308, E. S. Management v. Gao, 2017 PA Super 362, 176 A.3d 859 and Gregg v. Ameriprise Financial, supra. Also, in a non-jury trial recently appealed to the Superior Court, I found it appropriate to rule that a tenant breached the lease with the landlord by not paying rent owed and that the landlord violated the UTPCPL through deceptive conduct. See Deaktor v. Sutton, GD 16-12764 (Opinion dated 10/28/2019), Nos. 1548 and 1565 WDA 2019.

3. Replace blinds that were damaged or thrown away; T, pp. 701-702, jury trial exhibits NN and OO:                $  299.54

4. Clean sofa and chair stained by rain water; T, pp. 704-707, jury trial exhibits QQ and RR:                $  204.98
                                                        Total: $10,512.57

The causal connection between the HICPA violation and the $8,500 to replace the front living room header and provide support should be very apparent. 73 P.S. §517.9 of HICPA, entitled "Prohibited acts," states that "No person shall: ... .(6) Deviate from or disregard plans or specifications, in any material respect, without a written change order dated and signed by both the contractor and owner, which contains the accompanying price changes for each deviation." The plans for the new master bedroom being added to the McNaughtons' home called for most of it to be constructed on a new second floor on top of their existing first floor living room, after removal of the existing roof. Architect Kauric perceived the need to strengthen the front of the home to accommodate the additional load from the new second floor, especially given voids in the structure below due to a large window in the living room and a two car garage door opening below it. Mr. Kauric's design drawings, therefore, called for the installation of a large new manufactured wood beam spanning the width of the living room and posts supporting the beam on each end to the foundation. See T, p. 1007 and jury trial exhibit E, Sheet A-2. Hoover Contracting, however, without a written change order or even verbal approval, did not install the beam or place the support posts outside the void in the wall below from the garage opening. See T, p. 319. Therefore, the $8,500.00 to install a beam with proper support certainly was caused by Hoover Contracting's violation of the HICPA provision prohibiting deviations from plans absent a change order.

8

As to the other three items, Mr. Hoover told the McNaughtons he would pay these expenses, but then failed to do so. See T, pp. 328-330, 230-31 and 169. Under HICPA, abandoning the home improvement contract or project, without justification, also is a "Prohibited act." See 73 P.S. §517.9(5). Since Mr. Hoover acknowledged responsibility for these expenses, but instead abandoned the project without paying them, these expenses also are causally related to a HICPA violation. The final three expenses also are causally related to a violation of the UTPCPL. The UTPCPL prohibits "deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4)(xxi). Telling the McNaughtons he would pay these expenses and then not doing so is deceptive conduct by Mr. Hoover that is causally related to the unpaid expense. Therefore, my verdict is causally connected to the HICPA and UTPCPL violations and not erroneous.

## C. Treble damages

Hoover Contracting also alleges I made an error by awarding the McNaughtons three times their actual damages. See Statement of Errors, ¶ nos. 3 and 10. While Hoover Contracting acknowledges 73 P.S.201-9.2 in the UTPCPL authorizes such an award, it alleges there was no evidence of any intentional or reckless, wrongful conduct to warrant the award. See Schwartz v. Rocky, 593 Pa. 536, 932 A.2d 885 at 898 (2007). Apparently Hoover Contracting conducted a highly selective review of the evidence because I can find multiple examples of intentional or reckless, wrongful conduct.

The most prominent example of intentional or reckless, wrongful conduct is Hoover Contracting disregarding Architect Kauric's structural design above the living room window. Architect Kauric and Mr. Hoover walked through the home, before the

9

project started, and Mr. Kauric explained two approaches to the structural design and accepted and designed the approach preferred by Mr. Hoover. NJT, pp. 65-66. Mr. Hoover, however, decided not to follow Mr. Kauric's plans and did not install a large new manufactured wooden beam spanning the width of the living room or the posts supporting the beam on each end to the foundation. Mr. Hoover did not tell the McNaughtons or Architect Kauric before he constructed the new second floor without this support, and the McNaughtons only became aware around July 4, 2015 when Mr. McNaughton noted beams lying in the front yard. See NJT, pp. 77-79. In response to Mr. McNaughton's text message about the beams lying in the front yard, Mr. Hoover texted back that the beams had been delivered to their home due to a mistake by the lumber company. See NJT, p. 79. Mr. Hoover's text message was false. Mr. Hoover provided the lumber company with Architect Kauric's drawings and the lumber company delivered the beams as specified by Architect Kauric. The truth was that Mr. Hoover had disregarded the Architect's structural design.

Here are additional examples of Hoover Contracting's intentional or reckless, wrongful conduct. Mr. Hoover represented that he would be on the job supervising his subcontractors (unless purchasing materials or bidding other jobs), but he was not. See NJT, p. 83. Even though Mr. Hoover knew "Sarah was more in charge of the money part" (T, p. 199), he discussed his price total of $20,425 for the "extras" only with Dave McNaughton. Mr. Hoover accepted the blame for damage to the lawn, blinds, sofa and chair, but after promising to pay to repair them, he failed to do so. Also, after Hoover Contracting left the job and demanded payment, Sarah McNaughton asked for a letter from an engineer stating that the home is structurally sound. See NJT, p. 112. Although

10

Hoover Contracting represented that it had such a letter that would be sent to the McNaughtons (see jury trial exhibit AAA), this was false as the McNaughtons never received the promised letter and it was not produced by Hoover Contracting during either trial.

## D. Leaving the job

Hoover Contracting also alleges I made an error by finding it "was not justified in leaving the job due to Defendants' nonpayment." The relevance of Hoover Contracting leaving the job without completing the project is that it is a violation of this provision of HICPA:

> No person shall:
> ....
> (5) Abandon or fail to perform, without justification, any home improvement contract or project engaged in or undertaken by a contractor. For the purposes of this paragraph, the term "justification" shall include nonpayment by the owner as required under the contract or any other violation of the contract by the owner.

73 P.S. §517.9. The justification provision does not apply because the payment was not "required under the contract" as there was no valid "home improvement contract" due to Hoover Contracting never obtaining a writing signed by the owner and contractor with all of the terms mandated by HICPA. See 73 P.S. §517.7. Therefore, my finding that Hoover Contracting was, pursuant to HICPA, without justification in leaving the job was correct.

## E. Attorney fees

Hoover Contracting also alleges I made multiple errors in awarding the McNaughtons $27,968.78 in costs and attorney fees. See Statement of Errors, ¶ nos. 7, 8, 9 and 10. To address these claims, I must first describe the process that was utilized for my decision on costs and attorney fees. At the June 11, 2019 non-jury trial, a redacted

11

version of the McNaughtons' attorney bills were offered into evidence during testimony by Sarah McNaughton. Hoover Contracting objected to the redacted bills for a variety of reasons. See NJT, pp. 93-97. The redacted bills were provided to Hoover Contracting well before the trial and Hoover Contracting did not ask the McNaughtons for the unredacted bills. See NJT, p. 98. The McNaughtons then offered the unredacted bills into evidence, which were admitted over objections by Hoover Contracting. See T, p. 99-100 and non-jury trial exhibit MMM. When Hoover Contracting complained that this was the first time seeing the bills,[4] I permitted Hoover Contracting to take 30 days to submit a written response to the bills and the McNaughtons 7 additional days to respond to Hoover Contracting's submission. See NJT, pp. 98-99 and 121-122. At no point during the non-jury trial did Hoover Contracting seek to cross examine Sarah McNaughton about the bills or call the McNaughtons' counsel or any other witness on the topic.

While I hoped that Hoover Contracting's post-trial submission would identify entries in the attorneys' bills that it believed to be inappropriate, Hoover Contracting instead submitted a brief that argued the bills were inadmissible because they were hearsay, unauthenticated, irrelevant and Sarah McNaughton was not competent to testify the bills were reasonable and necessary. The McNaughtons' response acknowledged that billings from these four time periods were primarily for work on common law claims: before November 21, 2015; between December 9, 2015 and April 12, 2016; during October 2016; and, between February 12, 2019 and February 26, 2019 (these days include the entire jury trial). The McNaughtons also acknowledged 11 hours billed on

---

[4] Had Hoover Contracting conducted diligent discovery and/or filed a motion to compel discovery, the situation would have been avoided. See NJT, p. 98, l.11-17.

December 11, 2018 was for an unrelated matter. Attached to the McNaughtons' response is the Affidavit of Jennifer Richnafsky, Esq. dated July 10, 2019 which states, among other things, that the time entries in the bills were made at or near the time the work was performed and that producing the bills is an activity regularly conducted by the law firm employing her.

I then carefully reviewed all of the McNaughtons' attorney bills, which contain dates ranging from 10/07/2015 to 06/03/2019, the identity and hourly rate of each attorney, a specific description of the work performed and the amount of time spent on each entry. Next, I used non-jury trial exhibit NNN, a one page summary of the billings, to assist in reducing the billings from the aggregate amount of $283,486.25[5]. I separated the bills into three time periods: (1) October, 2015 through May 2018; (2) June 2018 through February 26, 2019 and (3) February 27, 2019 through June 11, 2019. From the first time period, I subtracted all billings before November 21, 2015, between December 9, 2015 and April 12, 2016 and during October 2016, which left $44,635.55. With the McNaughtons' counsel working on nine potential claims during that time period and prevailing on only two of the nine, I considered multiplying $44,635.55 by 2/9. But, in reviewing the bills, I saw inefficiencies that led me to instead multiply by 1/9, yielding a product of $4,959.50 for this first time period. From the second time period, I subtracted all billings between February 12, 2019 and February 26, 2019, which left $174,865.75. As I did with the first time period, I multiplied by 1/9, then subtracted the 11 hours billed on December 10, 2018, leaving a net amount of $17,229.53. I did not subtract any time periods from the third time period and arrived at $17,339.25. The third time period

---

[5] The McNaughtons could only afford to pay their attorneys $43,000, but, their attorneys agreed the balance would be contingent on recovering it from Hoover Contracting via an award of counsel fees under HICPA and the UTPCPL. See NJT, pp. 103-104.

involved work mostly on the three statutory claims. With the McNaughtons prevailing on two of the statutory claims[6], I considered multiplying $17,339.25 by 2/3. However, due to inefficiencies, I instead multiplied by 1/3, yielding a product of $5,779.75. Here is a summary of my calculations of the McNaughtons' counsel fee award:

| | | |
|---|---|---|
| (1) October, 2015-May, 2018: $44,635.55 x 1/9 | | = 4,959.50 |
| (2) June, 2018-2/26/2019: $174,865.75 x 1/9 - (2,200) | | = 17,229.53 |
| (3) 2/27/2019-6/11/2019: $ 17,339.25 x 1/3 | | = 5,779.75 |
| Total | | $ 27,968.78 |

Hoover Contracting alleges the McNaughtons' attorney bills should not have been admitted into evidence because they are hearsay, were not authenticated, were not accompanied by expert testimony as to being reasonable and necessary, were admitted based on an affidavit of a witness not subject to cross examination and were not produced until near the end of the trial. See Statement of Errors, ¶ no. 7. First, Wallace v. Pastore, 1999 PA Super 297, 742 A.2d 1090, also involving attorney fees under the UTPCPL, holds that a memorandum of law and counsel's bill, submitted at the end of the trial, are a sufficient basis from which the Court can determine counsel fees. Second, the testimony of Ms. McNaughton, with the trial representations of Attorney Richnafsky (see NJT, pp. 95-96), an officer of the court, or Attorney Richnafsky's affidavit, meet the requirements for the "Records of Regulary Conduct Activity" exception to the rule against hearsay (see Pa. R.E. no. 803(6)), authentication (see Pa. R.E. no. 901) and are sufficient proof the bills are reasonable and necessary. Hoover Contracting also made no showing of a lack of trustworthiness. See Pa. R.E. no. 803(6)(E). Third, Hoover Contracting could have cross examined Sarah McNaughton and Attorney Richnafsky or asked for the trial to continue to another date to do so. See NJT, pp. 98-99 and 121-122. Finally, to avoid

---

[6] The McNaughtons did not prevail on their Fair Credit Extension Uniformity Act claim.

14

expert witness fees that could be shifted to the opposing party, affidavits of counsel are frequently utilized for statutory fee claims in state and federal courts. Given the lack of any pre-trial notice by Hoover Contracting that it expected the McNaughtons to hire another expert and the precedent set in Wallace v. Pastore, the McNaughtons use of an affidavit of counsel was appropriate. Therefore, admitting their attorney bills into evidence was correct.

Hoover Contracting alleges I made an error by awarding an amount of attorney fees nearly three times the amount of the actual damages. See Statement of Errors, ¶ no. 8. While Hoover Contracting alleges the $27,968.78 award is excessive, the McNaughtons' attorneys submitted itemized bills that totaled $283,486.25 and I believe the significant reductions I made resulted in an award that was more than reasonable to Hoover Contracting. Hoover Contracting also complains about the attorney fee being nearly three times the size of the UPPCPL damages award, but, there is no rule prohibiting attorney fee awards that are larger than UTPCPL damage awards. In fact, the Superior Court has approved an attorney fee award that was more than eleven times the amount of the UTPCPL damages. See Neal v. Bavarian Motors, 2005 PA Super 305, 882 A.2d 1022. Thus, it was not an error for me to award an amount of attorney fees nearly three times the amount of the actual damages.

Hoover Contracting alleges I made an error by awarding costs and attorney fees unrelated to the non-jury trial on the statutory claims. See Statement of Errors, ¶ no. 9. In my review of all of the billings, I saw work related to the statutory claims being performed throughout the approximately four year period. I believe the calculations described above resulted in an award amount no greater than was necessary for

15

representation of the McNaughtons on only the HICPA and UTPCPL claims. The award amount may understate the McNaughtons' attorney fees for the statutory claims since it contains no billings from the lengthy jury trial, when "most of the evidence and testimony relevant to the ... statutory claims" was offered. NJT, p. 7 (see McNaughtons' non-jury trial opening statement, NJT, pp. 3-47). Furthermore, the Superior Court of Pennsylvania has acknowledged the difficulty of parsing out the time spent on statutory claims from other claims and has been satisfied when counsel makes an effort to apportion the time spent on the statutory claims. See Neal v. Bavarian Motors, 882 A.2d 1022 at 1032 and Boehm v. Riversource Life, 117 A.3d 308 at 335 (2015). Counsel for the NcNaughtons, by acknowledging work performed during the previously mentioned four time periods was primarily on the common law claims, adequately apportioned the time spent on the statutory claims. Therefore, I did not award the McNaughtons costs and attorney fees unrelated to the HICPA and UTPCPL claims.

## F. Pre-judgment interest

The final allegation of an error that I will address is Hoover Contracting's claim that I made an error by denying any pre-judgment interest. See Statement of Errors, ¶ no. 11. Pre-judgment interest is available as a matter of right for a breach of contract. However, Hoover Contracting was not permitted to pursue a breach of contract claim against the McNaughtons because its contract with the McNaughtons violated ten of the requirements of 73 P.S. §517.7 in HICPA. Because Hoover Contracting could pursue only an unjust enrichment claim, I believe pre-judgment interest is a matter of judicial discretion to be awarded "as justice requires." Cresci Const. Services, Inc. v. Martin, 2013 PA Super 66, 64 A.3d 254, 259, citing Restatement (Second) Contracts §354(2). I

16

do not believe that justice requires an award of pre-judgment interest to Hoover Contracting. The purpose of limiting contractors who violate 73 P.S. §517.7 in HICPA to an unjust enrichment claim is to penalize them by prohibiting use of the superior remedies available for breach of contract. See Shafer Elec. & Const. v. Mantia, 626 Pa. 258 at 267-268, 96 A.3d 989 at 996. With Hoover Construction claiming $23,600 for breach of contract damages and receiving a jury verdict of $80,000 for unjust enrichment, Hoover Contracting has been rewarded instead of penalized for violating HICPA. Hence it would be unjust for me to increase this unintended reward for the violation of HICPA by adding pre-judgment interest to the $80,000 verdict. Therefore, I was correct o deny pre-judgment interest to Hoover Contracting.

BY THE COURT:

_____,J.

17